UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT BANKWITZ, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>ECOLAB, INC., A DELAWARE CORPORATION,<br><br>Defendant. | Case No. 17-cv-02924-EMC<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO COMPEL ARBITRATION AND TO STAY PROCEEDINGS**<br><br>Docket No. 21 |

Plaintiffs filed a class action wage and hour complaint against their employer, Ecolab, after signing an arbitration agreement purporting to require arbitration of all employment-related claims and to prohibit class, collective, and representative actions in any forum. Before the Court is Ecolab's motion to compel arbitration or to stay this action until the Supreme Court reviews the enforceability of employment class action waivers in *Morris v. Ernst & Young, LLP*, 137 S. Ct. 809 (2017). The Court conditionally **DENIES** the motion to compel arbitration and **GRANTS IN PART AND DENIES IN PART** the motion to stay because the Supreme Court's *Morris* decision will be dispositive.

## I. BACKGROUND

Plaintiffs are employees of Ecolab who claim they were misclassified as exempt employees and therefore wrongfully denied overtime and doubletime premiums. They bring claims under the California Labor Code, the Unfair Competition Law, and the Private Attorney General Act ("PAGA"). Ecolab moved to compel arbitration of all Plaintiffs' claims except the PAGA claim, or in the alternative to stay this case pending the United States Supreme Court's ruling on the enforceability of arbitration agreements like Ecolab's in *Morris*.

Plaintiffs assented to Ecolab's Arbitration Agreement as a condition of employment with

For the Northern District of California

1  no option to opt-out. Docket No. 21, Declaration of Amy Daly ("Daly Decl."), ¶ 5. The
2  agreement mandates that both parties arbitrate all claims and requires Plaintiffs to arbitrate in an
3  individual capacity—not as a collective or class claim. Daly Decl. ¶ 10, Ex. 5 ("Agreement") at 2.
4  The Agreement permits severance of unlawful provisions "except that arbitration may only
5  proceed in an individual capacity." *Id*. Furthermore, the Agreement states, "[t]he arbitrator shall
6  not have the authority to hear multiparty, class, collective or representative actions." Agreement
7  at 3.

In opposition to Defendant's motion, Plaintiffs argue that the Agreement is unenforceable under *Morris* because it requires them to waive their right to bring "any class or collective action in any court or in arbitration related to any dispute." Agreement at 2. Plaintiffs also argue that, irrespective of the legality of the class action waiver, the Agreement is unconscionable and therefore unenforceable.

## II. DISCUSSION

### A. Class Action Waiver

The Ninth Circuit has held that arbitration agreements requiring employees to pursue work-related claims individually are unenforceable because class and collective actions are protected forms of "concerted activity" under the National Labor Relations Act. *Morris v. Ernst & Young, LLP*, 834 F.3d 975, 975 (9th Cir. 2016).

The agreement in *Morris* prohibited concerted action of all legal claims, required that employees use only arbitration, and was a condition of employment with no opt-out provision. *Id*. Likewise, the Agreement here prohibits class actions against Ecolab in all forums, compels employees to arbitration, and is a condition of employment. Agreement at 1–3. The Agreement's class action waiver provision is therefore unlawful under *Morris*, as Ecolab concedes. Docket No. 21 at 15.

Moreover, the class action waiver provision is not severable under the Agreement's own terms, which permit severance of unlawful provisions "except that arbitration may only proceed in an individual capacity." Agreement at 2. Accordingly, after severing the class action waiver, the Court would not be able to compel arbitration of class claims because the parties did not contract

2

to class-wide arbitration. *Stolt-Nielsen S.A. v. Animal Feeds Int'l. Corp.*, 559 U.S. 662, 684 (2010). The Agreement also expressly deprives the arbitrator of any authority to hear multiparty, class, collective or representative claims. Agreement at 3. Thus, Ecolab's Arbitration Agreement is unenforceable under *Morris* because the class action waiver is not severable.

The Supreme Court heard oral arguments in *Morris* on October 2, 2017. Its ruling is forthcoming. Unless and until the Supreme Court reverses *Morris*, it continues to be the law of this circuit and this Court is bound to follow it. *See Yong v. INS*, 208 F.3d 1116, 1119 n.2 (9th Cir. 2000). Nevertheless, if appropriate, the parties may revisit the issue after the case is decided.

B.  Unconscionability

Plaintiffs argue that even if *Morris* does not apply, the agreement is unenforceable because it is unconscionable. A successful unconscionability defense requires a showing of both procedural and substantive unconscionability. *Armendariz v. Found. Health Psychcare Svcs., Inc.*, 24 Cal.4th 83, 99 (2000). As explained below, Plaintiffs have demonstrated only marginal procedural unconscionability and no substantive unconscionability. For that reason, the Arbitration Agreement is not unconscionable.

1.  Procedural Unconscionability

Procedural unconscionability focuses on "oppression" and "surprise" during the negotiation of a contract. *Id*. at 114. "Oppression" arises from an inequality of bargaining power. *Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1171 (9th Cir. 2003). "Surprise" involves the extent to which the disputed terms are hidden by the party seeking to enforce them. *Id*. All contracts of adhesion are at least slightly oppressive, but adhesion alone gives rise to only a low degree of procedural unconscionability. *Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1261–62 (9th Cir. 2017). Without other indications of procedural unconscionability, contracts of adhesion will still be enforced. *Id.* Here, it is undisputed that the Agreement is a slightly oppressive contract of adhesion because it was imposed upon Plaintiffs as a condition of employment with no opt-out provision. Docket No. 21, Daly Decl. ¶ 5.

Plaintiffs fail to demonstrate additional procedural unconscionability, however. They claim that Ecolab's failure to attach the governing American Arbitration Association ("AAA")

3

rules to the Agreement resulted in unconscionable "surprise" because Plaintiffs were unable to read the AAA rules before signing. However, incorporation of arbitration rules is only unconscionable when significant rights are "artfully hidden" from the party giving them up. *See Baltazar v. Forever 21, Inc*., 62 Cal. 4th 1237, 1246 (2016). Plaintiffs do not claim that any significant rights were hidden in the AAA rules. Rather, they challenge the incorporation of the rules in and of itself. Ecolab correctly notes that both the California Supreme Court and the Ninth Circuit have rejected that argument, finding that the incorporation of rules in and of itself is not procedurally unconscionable. *See Baltazar*, 62 Cal. 4th at 1246 (rejecting claim that employer's failure to provide copy of AAA rules with arbitration agreement gave rise to a "greater degree of procedural unconscionability"); *Poublon*, 846 F.3d at 1262 (same); *compare Fitz v. NCR Corp*., 118 Cal. App. 4th 702, 721 (2004) (holding that an incorporated AAA discovery rule was deliberately hidden by a conflicting discovery provision in the arbitration agreement).

Plaintiffs also argue that the Agreement is unconscionable because it does not specify which version of the AAA rules will apply. *See Harper v. Ultimo,* 113 Cal.App.4th 1402, 1406–1407 (2003) (finding unconscionability where neither the arbitration agreement nor the incorporated Better Business Bureau rules specified which version of the rules applied). Ecolab's Agreement provides a link to an online copy of the AAA rules, which state that the rules in place at the time of arbitration apply. *See* AAA Employment Arbitration Rules, Art. 1. Courts have held that an agreement is not procedurally unconscionable for failure to specify what version of arbitration rules apply when the rules themselves do so. *Lucas v. Gund*, 450 F. Supp. 2d 1125, 1131–32 (C.D. Cal. 2006) (holding that "[w]hen an agreement references other rules . . . [which] specify which version of the rules should apply to the dispute, those rules control" and are not unconscionable); *see also, Evans v. CenterStone Dev. Co*., 134 Cal. App. 4th 151, 158 (2005) (finding that when an agreement provided certain rules should govern but did not specify which version of the rules, the rules' provision applying those in effect on the date of commencement of the arbitration should control).

2. <u>Substantive Unconscionability</u>

Because the Agreement is only slightly procedurally unconscionable, Plaintiffs must prove

a high degree of substantive unconscionability. *Armendariz*, 24 Cal. 4th at 114 (holding that "the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa"). Contracts are substantively unconscionable when their terms are unreasonably one-sided or have overly harsh effects. *Id.*

Plaintiffs argue that the Agreement is unreasonably one-sided or overly harsh because it (1) requires them to pay attorney fees they would not have to pay in court; (2) demands a "free peek" at Plaintiffs' case by requiring informal dispute resolution; (3) allows for unilateral termination by Ecolab; and (4) requires use of arbitrators who may not be neutral because Ecolab is a "repeat player." These arguments are not persuasive.

Plaintiffs' attorney fee argument fails under the plain language of the Agreement. The Agreement does not require Plaintiffs to pay fees that they would not have to pay in court. The relevant provision states, "If, under applicable federal, state, or local law, the prevailing party would be entitled to an award of attorney's fees and costs, the arbitrator may award such fees and costs." Agreement at 3. Thus, the Agreement explicitly permits the arbitrator to award Plaintiffs' attorney fees subject to any applicable fee shifting statute. That the Agreement does not affirmatively mandate fee shifting does not render it unconscionable, because courts presume that arbitrators follow the law. *Green Tree Financial Corp.-Alabama v. Randolph*, 531 U.S. 79, 82 (2000) (holding that an arbitration agreement that did not mention arbitration costs and fees was not unenforceable on the theory that it failed to provide the plaintiff with protection from prohibited costs); *compare Armendariz,* 14 Cal. 4th at 110 (holding that an arbitration agreement that *required* an employee to bear expenses he would not have to bear in court was unconscionable).

Likewise, the Agreement does not require Plaintiffs to provide Ecolab with a "free peek" at Plaintiffs' case. The Agreement merely *encourages* an attempt at dispute resolution through Ecolab's Human Resources Department prior to filing for arbitration. Agreement at 2 ("[a]ssociates are encouraged to . . . resolve any work-related problem [through HR Policy Manual procedures] before initiating [arbitration]"). It does *not* require such dispute resolution prior to

5

filing arbitration. *Id.* Although a contractual *requirement* of pre-dispute resolution may add a degree of unconscionability, that is not the situation here. *Compare Nyulassy v. Lockheed Martin Corp.*, 120 Cal. App. 4th 1267, 1282–83 (2004) (finding that an arbitration agreement *requiring* the plaintiff to submit to employer-controlled dispute resolution gave the defendant an unconscionable "free peek" at the plaintiff's case.).

Plaintiffs also fail to show that the unilateral termination provision is unconscionable. Plaintiffs cite *Ingle v. Circuit City Stores, Inc*., 328 F.3d 1165 (9th Cir. 2003) to support this argument, but that case is distinguishable. There, the unilateral modification applied retroactively to disputes arising prior to the date of notice of termination. *Ingle*, 328 F.3d at 1179. In contrast, Ecolab's modification provision applies only prospectively, not to disputes arising prior to the notice of termination. Agreement at 2. Ecolab does not have the unilateral right to avoid or terminate arbitration once a dispute arises. Plaintiffs have not cited a case where the unilateral right to terminate prospectively has been held unconscionable. Moreover, the entire arbitration agreement in *Ingle* applied only to claims brought by employees and contained a number of other unconscionable provisions that do not appear here. *Ingle*, 328 F.3d at 1175-78 (agreement also required employees to pay an arbitration filing fee to the employer, split the cost of arbitration, and follow a strict one-year statute of limitations, all of which were more burdensome than a court proceeding). Absent other unconscionable terms, Ecolab's unilateral modification provision does not render the Agreement unconscionable. *Shierkatz Rllp v. Square, Inc.,* No. 15-CV-02202-JST, 2015 WL 9258082, at *12 (N.D. Cal. Dec. 17, 2015) (finding no authorities supporting the proposition that a unilateral modification provision can render a delegation provision substantively unconscionable by itself).

Lastly, Plaintiffs' claim that the Agreement does not guarantee a neutral arbitrator also fails. Plaintiffs argue the Agreement favors Ecolab because it requires an arbitrator from the AAA and Ecolab has previously arbitrated with the AAA. Docket No. 23 at 10. However, merely asserting a "repeat player effect" claim is insufficient to support an unconscionability finding. *See Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1285 (9th Cir. 2006) (holding that repeat player argument without any evidence of bias of AAA arbitrators did not support a finding of

6

1  unconscionability). Plaintiffs must present "particularized evidence demonstrating impartiality."
2  *Nagrampa*, 469 F.3d at 1285. They have not. Absent evidence to the contrary, California courts
3  have generally found the AAA provides a neutral forum for dispute resolution. *See Nagrampa*,
4  469 F.3d at 1302 (O'Scannlain, J., concurring in pertinent part). *Cf. Mercuro v. Superior Court*,
5  96 Cal.App.4th 167, 178 (2002) (finding substantive unconscionability because the employer
6  benefited from repeatedly appearing before a pool of only eight arbitrators).

In sum, though traces of unconscionability are present, the Court finds that it is not enough to render the Agreement unenforceable. Accordingly, the enforceability of Ecolab's Arbitration Agreement rises and falls with the lawfulness of the class action waiver under *Morris*.

C. Stay Pending *Morris*

In light of the Supreme Court's impending decision in *Morris*, Ecolab requests a stay of proceedings. The parties agree that this Court has the discretionary power to stay proceedings. *See Landis v. N. Am. Co.*, 229 U.S. 248, 254 (1936). In deciding whether to stay a case pending a Supreme Court ruling, courts consider: (1) "the possible damage which may result from granting of a stay;" (2) "the hardship or inequity which a party may suffer in being required to go forward;" and (3) "the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962) (citing *Landis,* 229 U.S. at 254-55).[1] Ecolab bears the burden of establishing the need for the stay. *Clinton v. Jones,* 520 U.S. 681, 706 (1997).

1. Possible Damage from Granting Stay

The first *Landis* factor concerns the possible damage that could arise from granting the stay. *CMAX*, 300 F.2d at 268. Plaintiffs argue that the stay would damage them by delaying the

---

[1] The *Landis* standard applies where a party seeks to stay a district court proceeding pending resolution of *another* action, as is the case here. Plaintiffs list factors from *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)—likelihood of success on the merits and the public interest—that do not apply under the *Landis* standard. However, the *Hilton* standard applies where a party seeks to stay enforcement of a judgment or order pending an appeal of that *same* judgment or order in the *same* case. *See Lal v. Capital One Fin. Corp.*, No. 16-CV-06674-BLF, 2017 WL 282895, at *2, *5 (N.D. Cal. Jan. 23, 2017) (citing *Hilton v. Braunskill*, 481 U.S. 770, 778 (1987)); *see also McElrath v. Uber Techs., Inc.*, No. 16-CV-07241-JSC, 2017 WL 1175591, at *5 (N.D. Cal. Mar. 30, 2017) (applying the *Landis* factors, not the *Hilton* factors, to a stay pending the Supreme Court's *Morris* decision). Here, *Landis*, not *Hilton*, applies.

7

relief they are allegedly owed. The forthcoming Supreme Court ruling in *Morris* minimizes the potential damage because the stay would be short and not indefinite. *See McElrath v. Uber Techs., Inc.*, No. 16-CV-07241-JSC, 2017 WL 1175591, at *5 (N.D. Cal. Mar. 30, 2017) (granting a stay pending *Morris* because it would be of "short, not indefinite, duration"). The first factor does not weigh against granting a stay.

2. <u>Possible Hardship from Denying Stay</u>

The second factor considers the possible harm from requiring Ecolab to litigate while *Morris* is pending in the Supreme Court. *CMAX,* 300 F.2d at 268. As explained above, if the Supreme Court overturns *Morris*, the Agreement's class action waiver may ultimately be deemed enforceable. In such a scenario, Plaintiffs would be precluded from pursuing class claims in any forum, the Court would have to refer Plaintiffs' individual claims to arbitration, and only Plaintiffs' PAGA claims would arguably remain in this Court. Continued litigation on class certification issues—discovery concerning the Rule 23(a) and Rule 23(b)(3) factors, including motion practice related to class certification—might cause unnecessary hardship on Ecolab if the class action waiver were ultimately enforced. *See McElrath*, WL 1175591, at *5. Further, allowing substantive motion practice on Plaintiffs' individual claims to proceed absent a stay — such as motions to dismiss or motions for summary judgment—might also be prejudicial insofar as it would deprive Defendant of the right to benefit from arbitration of those issues. *Id.*

However, Defendant is unlikely to suffer prejudice from limited discovery on Plaintiffs' individual claims in the interim, since a similar exchange of information would likely need to occur in arbitration, too. *See Daugherty v. SolarCity Corp.*, No. C 16-05155 WHA, 2017 WL 386253, at *4 (N.D. Cal. Jan. 26, 2017) (allowing limited discovery because it would be useful for both class action and in individual arbitration).

The same may not be true for Plaintiffs' PAGA claim, however, even if it may ultimately proceed in this Court. To some extent, discovery on the PAGA representative claim may ultimately resemble class-like discovery. For example, PAGA permits the recovery of fixed civil penalties. *See* Cal. Lab. Code § 2699. Such penalties are typically fixed based on the number of violations, "except [where] a civil penalty is specifically provided" elsewhere. *Id.* § 2699(f)(2)

8

(setting default fixed penalties of $100 for each aggrieved employee per pay period for initial violation and $200 for each subsequent violation). Identifying the number of violations, however, may require discovering the hours worked and wages received by each employee on a daily or weekly basis, and then calculating whether they were underpaid any wages. Other penalties are keyed to variables like employees' rate of pay, *see*, *e.g.*, Cal. Labor Code § 203(a) (waiting time penalties for violations of §§ 201 and 202 are a continuation of "wages" "from the due date thereof at the same rate until paid or until an action therefor is commenced" but not more than 30 days), or the amount of underpaid wages, *see*, *e.g.*, Cal. Labor Code § 558 (a) (initial violations are $50 for each underpaid employee for each pay period "in addition to an amount sufficient to recover underpaid wages" and $100 for subsequent violations plus the underpaid amount). Thus calculating the amount of civil penalties might also require discovery of information that would be similar to class discovery.

Allowing discovery of the PAGA representative claims may be premature. If *Morris* is reversed and arbitration is compelled, there is possibility (though not a certainty) that PAGA representative claims might be stayed. If the Court were to stay the PAGA claims pending arbitration of the individual claims and Plaintiffs were to lose those claims in arbitration, Ecolab might be able to demonstrate that the outcome of those proceedings should have a collateral estoppel effect on the question of Plaintiffs' standing under PAGA. *See Clark v. Bear Stearns & Co., Inc.*, 966 F.2d 1318 (9th Cir. 1992) (recognizing that arbitration decisions may have collateral estoppel effect in federal court). In that event, Ecolab would be prejudiced by having to engage in PAGA discovery that might ultimately be mooted depending on the outcome of Plaintiffs' individual arbitration.

To be sure, if the Court were not to stay Plaintiff's PAGA claim and allow it to proceed even where his individual labor code claims are subject to arbitration, were Plaintiff to prevail on his PAGA claim, findings therein could be imported into, perhaps binding on, arbitration. *See Collins v. D.R. Horton, Inc.*, 505 F.3d 874, 880 (9th Cir. 2007) (arbitrators are also bound by doctrine of collateral estoppel); *Arias v. Sup. Ct.*, 46 Cal.4th 969, 987 (2009) (finding of Labor Code violation under PAGA has a collateral estoppel effect that permits employees "to obtain

1  remedies other than civil penalties for the same Labor Code violations" in separate actions).
2  Discovery on Plaintiff's PAGA claims, including representative claims, would in that event
3  advance the litigation, and thus a stay would cause delay in Plaintiff's prosecution of the PAGA
4  claim.

Nonetheless, given the risk that PAGA claims might be stayed pending arbitration, and the relatively short stay pending *Morris*, the second *Landis* factor leans slightly in favor of granting a stay of the litigation provided Plaintiffs are allowed to proceed with discovery on Bankwitz's individual claims. *See McElrath*, WL 1175591, at *6.

### 3. Orderly Course of Justice

The third factor considers whether a stay will simplify or complicate the judicial process. *CMAX,* 300 F.2d at 268. Ecolab argues that the stay is in the interest of judicial economy because *Morris* may foreclose Plaintiffs' class claim. The Court agrees. There is little value in litigating a class certification motion or undertaking class discovery now when the Supreme Court's impending ruling might ultimately moot those claims. The third factor thus weighs in favor of granting the stay. However, no matter the resolution in *Morris*, Plaintiffs will be entitled to bring their individual claims in some forum and their PAGA claims in this Court. Thus, some limited discovery into the individual claims will not involve a potential waste of resources.

In these circumstances, a limited stay of this litigation pending the Supreme Court's review of *Morris* is justified. The stay is granted upon the following conditions: (1) the parties may proceed with individual discovery, (2) the parties shall undertake preservation of evidence relevant to all claims pursuant to Federal Rule of Civil Procedure 26(f), and (3) the parties shall meet and confer regarding a limited discovery plan to facilitate ADR.

///
///
///
///
///
///

## III. CONCLUSION

For the reasons stated above, the Court **DENIES** Defendant's motion to compel arbitration, and conditionally **STAYS** proceedings, except as specified above, pending the Supreme Court's decision in *Morris*. The Court will hold a case management conference on October 26, 2017 at 9:30 a.m., with an updated case management statement due one week earlier. ADR will be discussed at that time.

This order disposes of Docket No. 21.

**IT IS SO ORDERED**.

Dated: October 17, 2017

_____
EDWARD M. CHEN
United States District Judge