1  Alejandro P. Gutierrez, SBN 107688
   *agutierrez@hathawaylawfirm.com*
2  **HATHAWAY, PERRETT, WEBSTER, POWERS,**
   **CHRISMAN & GUTIERREZ, APC**
3  5450 Telegraph Road, Suite 200, Ventura, CA  93006
   Tel: (805) 644-7111; Fax: (805) 644-8296

4  Daniel J. Palay, SBN 159348
   *djp@calemploymentcounsel.com*
5  Brian D. Hefelfinger, SBN 253054
   *bdh@calemploymentcounsel.com*
6  **PALAY HEFELFINGER, APC**
   1484 E. Main Street, Suite 105-B, Ventura, CA 93001
7  Tel: (805) 628-8220; Fax: (805) 765-8600

8  Michael A. Strauss, SBN 246718
   *mike@strausslawyers.com*
9  Andrew C. Ellison, SBN 283884
   *andrew@strausslawyers.com*
10 **STRAUSS & STRAUSS, APC**
   121 North Fir Street, Suite F, Ventura, CA 93001
11 Tel: (805) 641-6600; Fax: (805) 641-6607

12 **Counsel for Plaintiffs and the Putative Class**

13              UNITED STATES DISTRICT COURT

14              NORTHERN DISTRICT OF CALIFORNIA

15  ROBERT BANKWITZ, an individual;          Case No. 3:17-cv-02924-EMC
    WILLIAM JACOBO, an individual; on
16  behalf of themselves and other persons   CLASS ACTION
    similarly situated,
17                   Plaintiffs,             **NOTICE OF MOTION AND MOTION FOR**
                                             **PRELIMINARY APPROVAL OF CLASS**
18          v.                               **ACTION AND PRIVATE ATTORNEYS**
                                             **GENERAL ACT SETTLEMENT**
19  ECOLAB INC., a Delaware corporation; and
    DOES 1 through 100, inclusive,           HEARING:
20                                           Date:     January 7, 2021
                                             Time:     1:30 p.m.
21          Defendants.                      Place:    Courtroom 5, 17th Floor
                                                       450 Golden Gate Avenue
22                                                     San Francisco, CA 94102

23

24

25

26

27

28

TO DEFENDANT AND ITS ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on January 7, 2021, at 1:30 p.m., or as soon thereafter as the matter may be heard before the Honorable Edward M. Chen, at Courtroom 5, 17th Floor, 450 Golden Gate Avenue, San Francisco, CA 94102, Plaintiffs Robert Bankwitz and William Jacobo ("Plaintiffs") will and hereby do move the Court pursuant to Federal Rule of Civil Procedure 23 for an Order:

1.      Granting preliminary approval of the proposed settlement upon the terms and conditions set forth in the "Labor Code Private Attorneys General Act and Class Action Settlement and Release Agreement" (hereinafter referred to as the "Settlement" or "PAGA/Class Agreement");

2.      Preliminarily certifying, for settlement purposes only, a settlement class comprising the Class Members, defined as follows (the "Settlement Class" or "Class Members"):

> Plaintiffs Bankwitz and Jacobo and all other current and former Ecolab employees who worked as Territory Managers (TMs) and/or Hospitality Territory Managers (HTMs) and/or Territory Sales Representatives (TSRs) in California at any time from May 22, 2013 through the date of preliminary approval of the PAGA/Class Agreement (the "Class Period"), except those who: (i) filed an arbitration complaint asserting the same or similar claims as Bankwitz and Jacobo that is presently pending and has not been adjudicated to a final award, dismissed, or resolved by an offer of compromise; (ii) accepted an offer of settlement of their individual claims and released their wage and hour claims against Ecolab; (iii) are individually represented by Plaintiffs' Counsel for purposes of pursuing their individual wage and hour claims but have not filed an arbitration complaint; or (iv) were hired as a Territory Sales Representative on or after January 5, 2020, and did not hold a Territory Manager or Hospitality Territory Manager position between May 22, 2013 and January 4, 2020. "Class Members" excludes any individual who participated in the settlement of the case entitled *Martino v. Ecolab*, U.S. District Court for the Northern District of California, Case No. 5:14-cv-04358, and whose claims are completely barred by the *Martino* settlement.

3.      Appointing and approving Simpluris to administer the settlement payment procedures required by the Settlement ("Claims Administrator"), and preliminarily approving the settlement administration costs;

4.      Preliminarily appointing, for settlement purposes only, as Class Counsel: Hathaway, Perrett, Webster, Powers, Chrisman & Gutierrez APC; Palay Hefelfinger APC; and Strauss & Strauss, APC;

5.      Preliminarily appointing, for settlement purposes only, Robert Bankwitz and William Jacobo as Class Representatives of the Settlement Class;

6.      Provisionally approving the resolution of the Class Members' claims and finding that the terms of the Settlement are sufficient to warrant sending of notice to Class Members preliminarily certified for settlement purposes;

7.      Approving the contents and proposed manner of mailing of the Notice of Proposed Settlement and Final Settlement Approval Hearing (the "Notice of Class Settlement"), and Opt-Out Form, collectively attached to the Settlement as Exhibit A;

8.      Authorizing the mailing of the Notice of Class Settlement to the Class Members;

9.      Approving the settlement of the PAGA claims in this Action and the proposed PAGA Penalties Portion and payments to the California Labor Workforce Development Agency and PAGA Members under the Settlement and California Labor Code section 2699(5)(l)(2); and

10.     Scheduling a hearing (the "Final Settlement Approval Hearing"), to occur on or after June 3, 2021, in which the Plaintiffs shall seek an order from this Court to fully and finally approve the reasonableness of the Settlement, enter final judgment on the *Bankwitz* Action, and permanently enjoin all Class Members who have not timely opted out from the Settlement from pursuing or seeking to reopen claims that are in any way related to those asserted in the *Bankwitz* Action (collectively, "Final Approval," to be memorialized in the "Final Approval Order").

This Motion is based on this Notice of Motion and Motion; the Memorandum of Points and Authorities; the Declarations of Michael A. Strauss, Alejandro P. Gutierrez, Daniel J. Palay, Brian D. Hefelfinger, Andrew C. Ellison, Coleen De Leon, Robert Bankwitz, and William Jacobo, filed concurrently herewith, all supporting exhibits filed herewith, all other pleadings and papers filed in this action, and any argument or evidence that may be presented at the hearing in this matter.

Date: December 3, 2020          **STRAUSS & STRAUSS, APC**


By: */s/ Michael A. Strauss*
    Michael A. Strauss
    Attorneys for Plaintiffs and the Putative Class

# **TABLE OF CONTENTS**

I.      INTRODUCTION ...................................................................................................1

II.     STATEMENT OF FACTS ......................................................................................2

III.    PROCEDURAL BACKGROUND .........................................................................3

IV.     INVESTIGATION AND DISCOVERY ................................................................5

V.      SUMMARY OF THE PROPOSED SETTLEMENT.............................................6

    A.    The Settlement Class. ................................................................................ 6

    B.    Settlement terms. ....................................................................................... 7

    C.    Settlement value. ....................................................................................... 9

    D.    Release of claims. .................................................................................... 10

VI.     LEGAL ARGUMENT ..........................................................................................10

    A.    The Settlement satisfies the standards for approval under Rule 23. ........ 10

        1.    Extent of discovery and stage of the proceedings......................... 11

        2.    Amount offered in settlement. ...................................................... 11

        3.    Strength of case and risk, expense, complexity, and likely duration of litigation. ................ 12

        4.    Experience and views of counsel. ................................................. 13

        5.    Collusion between the parties. ...................................................... 13

        6.    The Settlement treats all class members equitably. ...................... 16

        7.    Other factors. ................................................................................ 16

    B.    Conditional certification of the class is appropriate. ............................... 17

        1.    The Settlement Class is sufficiently numerous............................. 17

        2.    Questions of law or fact are common to the class. ....................... 17

        3.    The Class Representatives' claims are typical of the class........... 18

        4.    The Class Representatives and their counsel will fairly and adequately protect the Class Members' interests. ................................................................. 18

        5.    Common questions of law and fact predominate............................ 19

        6.    A class action is superior to alternative methods......................... 20

    C.    The proposed class notice should be approved......................................... 20

1    D.  The Court should appoint Simpluris as Claims Administrator. ................................... 21

2    E.  Plaintiffs request approval of the PAGA settlement. ................................................. 22

3    F.  Proposed schedule for remaining procedures. .......................................................... 24

4   VII.  CONCLUSION ..................................................................................................................24

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT**

# TABLE OF AUTHORITIES

2   **CASES**

3   *Acosta v. Trans Union, LLC*,

4        243 F.R.D. 377 (C.D. Cal. 2007) .................................................................................... 11

5   *Amchem Prods. Inc. v. Winsor*,

6        521 U.S. 591 (1997) .............................................................................. 17, 19, 20

7   *Brown v. Ralph's Grocery Co.*,

8        197 Cal. App. 4th 489 (2011) ...................................................................................... 23

9   *Chu v. Wells Fargo Investments, LLC*,

10       Nos. C 05-4526 MHP, C 06-7924 MHP, 2011 WL 672645 (N.D. Cal. Feb. 16, 2011) .......... 24

11   *Churchill Vill., LLC v. Gen. Elec.*,

12       361 F.3d 566 (9th Cir. 2004) ...................................................................................... 21

13   *Class Plaintiffs v. City of Seattle*,

14       955 F.2d 1268 (9th Cir. 1992) .................................................................................... 11

15   *Crown, Cork & Seal Co. v. Parker*,

16       462 U.S. 345 (1983) .................................................................................................. 20

17   *Cunningham v. Leslie's Poolmart, Inc.*,

18       No. CV 13-2122 CAS CWX, 2013 WL 3233211 (C.D. Cal. June 25, 2013) ........................ 23

19   *Eisen v. Carlisle & Jacquelin*,

20       417 U.S. 156 (1974) .................................................................................................. 21

21   *Epic Systems Corp. v. Lewis*,

22       138 S. Ct. 1612 (2018) ................................................................................................ 3

23   *Fischel v. Equitable Life Assurance Soc'y of U.S.*,

24       307 F.3d 997 (9th Cir. 2002) ...................................................................................... 15

25   *Franco v. Rut Food Prods., Inc.*,

26       No. l:10-cv-02354-SKO, 2012 WL 5941801 (E.D. Cal. Nov. 27, 2012) .............................. 24

27   *Garcia v. Gordon Trucking*,

28       No. 1:10-CV-0324-AWI-SKO, 2012 WL 5364575 (E.D. Cal. Oct. 31, 2012) ...................... 24

*Hanlon v. Chrysler Corp.*,

    150 F.3d 1011 (9th Cir. 1998) ............................................................................... passim

*Harik v. Cal. Teachers Ass'n*,

    326 F.3d 1042 (9th Cir. 2003) ................................................................................... 17

*Hopson v. Hanesbrands Inc.*,

    No. CV-08-0844 EDL, 2009 WL 928133 (N.D. Cal. Apr. 3, 2009) ......................... 23

*In re Mego Fin, Corp. Sec. Litig.*,

    213 F.3d 454 (9th Cir. 2000) ............................................................................... 11, 12

*In re Tableware Antitrust Litig.*,

    484 F.Supp.2d 1078 (N.D. Cal. 2007) ........................................................................ 1

*In re Wells Fargo & Co. S'holder Derivative Litig.*,

    445 F. Supp. 3d 508 (N.D. Cal. 2020) ...................................................................... 14

*Jensen v. SECORP Indus.*,

    No. 2:18-CV-02890-RGK-GJS, 2018 WL 5961287 (C.D. Cal. Aug. 23, 2018) ..... 17

*Ladore v. Ecolab, Inc.*,

    No. CV 11-9386 FMO (JCX), 2013 WL 12246339 (C.D. Cal. Nov. 12, 2013) ..... 14

*Ladore v. Ecolab, Inc.*,

    No. CV 11-9386 FMO (JCX), 2013 WL 12246503 (C.D. Cal. Aug. 2, 2013) ........ 14

*Litty v. Merrill Lynch & Co.*,

    No. CV 14-0425 PA, 2015 WL 4698475 (C.D. Cal. Apr. 27, 2015) .................. 11, 13

*Martino v. Ecolab, Inc.*,

    No. 14-CV-04358-PSG, 2016 WL 614477 (N.D. Cal. Feb. 16, 2016) ......... 17, 18, 19

*McGrath v. Cnty. of Nev.*,

    67 F.3d 248 (9th Cir. 1995) ....................................................................................... 15

*McLeod v. Bank of America, N.A.*,

    No. 16-cv-03294-EMC, 2018 WL 5982863 (N.D. Cal. Nov. 14, 2018) ................... 24

*Morris v. Ernst & Young, LLP*,

    834 F.3d 975 (9th Cir. 2016) ....................................................................................... 3

*Mullane v. Central Hanover Bank & Trust Co.*,

    339 U.S. 306 (1950)...................................................................................................... 21

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,

    221 F.R.D. 523 (C.D. Cal. 2004)................................................................................... 13

*Nordstrom Commission Cases*,

    186 Cal. App. 4th 576 (2010)......................................................................................... 23

*O'Connor v. Uber Techs.*,

    201 F. Supp. 3d. 1110 (N.D. Cal. 2016)........................................................................ 22

*Officers for Justice v. Civil Serv. Comm'n*,

    688 F.2d 615 (9th Cir. 1982)......................................................................................... 12

*Radcliffe v. Experian Info. Solutions Inc.*,

    715 F.3d 1157 (9th Cir. 2013)....................................................................................... 14

*Rodriguez v. Hayes,*

    591 F.3d 1105 (9th Cir. 2010)....................................................................................... 18

*Sakkab v. Luxottica Retail N. Am. Inc.*,

    803 F.3d 425 (9th Cir. 2015)......................................................................................... 22

*Six (6) Mexican Workers v. Arizona Citrus Growers*,

    904 F.2d 1301 (9th Cir. 1990)....................................................................................... 15

*Staton v. Boeing Co.*,

    327 F.3d 938 (9th Cir. 2003) .......................................................................... 11, 13, 14, 16

*Van Vranken v. Atl. Richfield Co.*,

    901 F. Supp. 294 (N.D. Cal. 1995)............................................................................... 14

*Villacres v. ABM Industries Inc.*,

    117 Cal. Rptr. 3d 398 (2010)......................................................................................... 23

*Villalobos v. Calandri Sonrise Farm LP*,

    No. CV 12-2615 PSG, 2015 WL 12732709 (C.D. Cal. July 22, 2015)......................... 22

*Vizcaino v. Microsoft Corp.*,

    290 F.3d 1043 (9th Cir. 2002) ...................................................................................... 16

**MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT**

*Waldbuesser v. Northrop Grumman Corp.*,

      No. CV 06-6213-AB (JCX), 2017 WL 9614818 (C.D. Cal. Oct. 24, 2017) ...................... 14, 15

**STATUTES**

California Labor Code section 203 ............................................................................................. 8

California Labor Code section 2699 ........................................................................................... 22

California Code of Civil Procedure section 998 ....................................................................... 8

California Code of Civil Procedure section 1542 ..................................................................... 10

**RULES**

Federal Rule of Civil Procedure 23 ............................................................................... *passim*

Federal Rule of Civil Procedure 30 ............................................................................... 5, 11

**MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT**

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Pursuant to Federal Rule of Civil Procedure 23, Plaintiffs Robert Bankwitz and William Jacobo ("Plaintiffs") move this Court for an order preliminarily approving a proposed Labor Code Private Attorneys General Act and Class Action Settlement and Release Agreement (hereinafter referred to as the "Settlement" or "PAGA/Class Agreement") entered into by Plaintiffs and Defendant Ecolab Inc. ("Ecolab"). A true and correct copy of the Settlement and its exhibits, including a proposed Notice of Class Settlement, is attached hereto as Exhibit 1. The PAGA/Class Agreement proposes a settlement to resolve the class claims of a class of 53 individuals and the representative PAGA claim alleged by Plaintiff Bankwitz on behalf of 231 aggrieved employees ("PAGA Members"). The 231 PAGA Members covered by the proposed PAGA settlement includes the 53 individuals who will also participate in the class settlement, if approved.

The Settlement was achieved with the assistance of Mark Rudy, a well-regarded mediator experienced in mediating complex labor and employment matters, who oversaw a remote mediation and a series of follow up communications spanning several months, which resulted in settlement and a substantial benefit to the 231 PAGA Members and 53 Settlement Class Members.

Pursuant to the Settlement, and subject to this Court's final approval, in full settlement of all claims asserted in this Action, Ecolab will pay Two-Million, Five Hundred Fifty Thousand Dollars ($2,550,000.00), inclusive of: all payments to Settlement Class Members, Class Counsel fees not to exceed $735,000.00 (approximately 30% of the PAGA/Class Settlement Amount), litigation costs and expenses (not to exceed $150,000.00), Class Representative Service Awards (not to exceed $50,000.00 in total), claims administration costs (not to exceed $8,500.00), and payment of $200,000.00 in PAGA penalties to be allocated according to law between the PAGA Members and the California Labor Workforce Development Agency ("LWDA").

The Settlement readily satisfies the standard for preliminary approval – it is within the range of possible approval to justify sending notice to Class Members and scheduling final approval proceedings. *See In re Tableware Antitrust Litig.*, 484 F.Supp.2d 1078, 1079 (N.D. Cal. 2007). Accordingly, Plaintiffs seek an order: (i) granting preliminary approval of the proposed Settlement; (ii) preliminarily certifying,

for settlement purposes only, the proposed Settlement Class, provisionally approving the resolution of the class claims and finding that the terms of the Settlement are sufficient to warrant sending of notice to the Class Members; (iii) approving the contents and proposed manner of mailing of the Notice of Class Settlement and authorizing the mailing of the Notice of Class Settlement and accompanying forms to the Class Members; (iv) appointing Simpluris as the Claims Administrator and preliminarily approving the settlement administration costs; (v) preliminarily appointing, for settlement purposes only, as Class Counsel: Hathaway, Perrett, Webster, Powers, Chrisman & Gutierrez APC; Palay Hefelfinger APC; and Strauss & Strauss, APC; (vi) preliminarily appointing, for settlement purposes only, Robert Bankwitz and William Jacobo as Class Representatives of the Settlement Class; (vii) approving the settlement of the PAGA claims; and (viii) scheduling a final approval hearing.

## II.    STATEMENT OF FACTS

Until Ecolab eliminated the Hospitality Territory Manager and Territory Manager (collectively, "TM") positions in January 2020, it employed TMs in California to manage the accounts of Ecolab customers, including hotels, restaurants, nursing homes, schools, and hospitals. Declaration of Michael A. Strauss ("Strauss Decl." at ¶ 6). In this Action, Plaintiffs maintained that they were misclassified as exempt salespeople under the California Labor Code and Wage Orders. Ecolab maintained that TMs were exempt from the wage and hour provisions of the Labor Code and Wage Orders requiring the payment of overtime wages and meal and rest period premiums, and otherwise denied that it violated applicable wage and hour laws. *Id.*

Plaintiffs and some Class Members were also class members in the prior case of *Martino v. Ecolab, Inc.*, N.D. Cal. No. 5:14-cv-04358-VC. Strauss Decl. at ¶ 7. The *Martino* action sought overtime wages pursuant to the California Labor Code for all TMs in California for the class period of June 4, 2010 through October 15, 2016 (a period of approximately 6.3 years). *Id.* at ¶ 8. As here, Ecolab argued in *Martino* that the TMs were correctly classified as exempt salespersons. *Id.* The *Martino* matter settled, and all participants in the *Martino* settlement released their claims against Ecolab through August 18, 2016, the date of preliminary approval of the settlement. *Martino* at Docs. 60 at 15 (stipulation of settlement release provisions) and 72 (order granting preliminary approval). Final approval of the *Martino* settlement was granted on January 31, 2017. *Martino* at Doc. 101 (modified

order).

**III.    PROCEDURAL BACKGROUND**

On May 22, 2017, TMs Bankwitz and Jacobo (both class members from *Martino*) filed this case, seeking recovery on the following claims: (1) failure to pay overtime and doubletime wages under California law; (2) pay stub violations; (3) unfair competition; (4) failure to timely pay final wages; (5) failure to pay minimum wages; and (6) failure to provide legally compliant rest periods.  Doc. 1.  Plaintiffs sought relief on behalf of themselves and a putative class of TMs working in California during the four-year period prior to the filing of the Complaint.  *Id.* at 5.

On July 25, 2017, Plaintiffs filed a First Amended Complaint, adding a cause of action for civil penalties under the Labor Code Private Attorneys General Act of 2004 ("PAGA").  Doc. 17.

Plaintiffs each had signed an arbitration agreement with Ecolab that contained a class action waiver.  On August 8, 2017, Ecolab filed a motion to dismiss, to strike class action claims, to compel arbitration, and to stay Plaintiffs' PAGA claim.  Doc. 21.  On September 26, 2017, Plaintiffs filed a Second Amended Complaint, which added a cause of action for unpaid overtime under the Fair Labor Standards Act ("FLSA").  Doc. 30.  On October 17, 2017, the Court conditionally denied the motion to compel arbitration and issued a limited stay that allowed the parties to proceed with individual discovery while the Supreme Court reviewed *Morris v. Ernst & Young, LLP*, 834 F.3d 975 (9th Cir. 2016), which had held that class action waivers in employment arbitration agreements were unenforceable.  Doc. 35.

The U.S. Supreme Court overruled *Morris* in its May 21, 2018 decision in *Epic Systems Corp. v. Lewis*, 138 S. Ct. 1612 (2018). On August 2, 2018, following the ruling in *Epic Systems* and Ecolab's motion for reconsideration of the Court's conditional denial of its motion to compel arbitration, the Court granted Ecolab's motion to compel arbitration, compelled arbitration of the class claims on an individual basis, and stayed the PAGA claim.  Doc. 64.

Approximately 70 putative class members – all represented by counsel for Bankwitz and Jacobo – then filed individual arbitrations with the American Arbitration Association ("AAA").  Strauss Decl. at ¶ 19.  In their individual arbitrations, Bankwitz and Jacobo received final awards in their favor on the issue of exemption, with both arbitrators finding that Plaintiffs were non-exempt under California law.  Docs. 93 at 30-45, 95 at 11-24.  This Court confirmed both awards and entered judgment in favor of

1  Bankwitz and Jacobo.  Doc. 101.  Two other individual arbitrations also concluded with final awards in
2  favor of the TM claimants on the exemption issue.  Strauss Decl. at ¶ 19.

3      An additional seven TMs arbitrated their cases through the evidentiary hearing stage.  *Id.* at ¶
4  21. After those seven arbitration proceedings concluded, but before final awards were issued, the parties
5  re-engaged in settlement discussions and attended mediation with Mark Rudy on July 23, 2020.  *Id.*  The
6  cases did not resolve at that time, but discussions continued with Mr. Rudy's assistance.  *Id.*

7      Following mediation, Ecolab issued California Code of Civil Procedure section 998 offers to
8  compromise to each of the TMs with pending arbitrations who had not yet completed evidentiary
9  hearings.  *Id.* at ¶ 22.  Ecolab also made individual settlement offers to TMs who had not pursued
10 individual arbitration complaints.  *Id.*  Both the section 998 offers to arbitration claimants and the
11 individual offers to non-claimants carved out PAGA claims from the offers so that the individuals did
12 not release their PAGA claims by accepting the offers.  Two of the TMs with pending arbitration
13 complaints accepted 998 offers; 112 TMs who received an individual settlement offer accepted  their
14 individual offers. *Id.*

15      With Mr. Rudy's continued assistance, the parties eventually negotiated a class action and PAGA
16 settlement.  The PAGA settlement consists of 231 current and former TMs represented by Bankwitz as
17 PAGA "aggrieved employees" ("PAGA Members") who worked as TMs from May 18, 2016 through
18 the date of preliminary approval of the Settlement.  Strauss Decl. at ¶ 24.  The class action settlement
19 consists of  53 Class Members, which includes Plaintiffs, 8 individuals who filed individual arbitration
20 complaints but did not individually settle their claims, and 43 individuals who did not file arbitration
21 complaints and did not otherwise settle their claims.  *Id.*  The class action settlement does not include
22 59 TMs who had pending arbitration complaints or were otherwise represented for purposes of filing an
23 arbitration complaint at the time of settlement and who separately settled their individual claims.  *Id.*
24 Nor does it include the individuals who accepted either the section 998 offers to compromise or the
25 individual settlement offers made to non-arbitration claimants, described above.  *Id.*  It is only the class
26 and the PAGA Settlement that Plaintiffs now present to the Court for review and approval.

27      As part of the Settlement, the parties agreed that Plaintiffs would file a Fourth Amended
28 Complaint that contained PAGA and class action allegations supporting the claims to be resolved

through the Settlement. Strauss Decl. at ¶ 25. The parties subsequently filed a Stipulation seeking the Court's approval of the filing of the Fourth Amended Complaint. Dkt. 129. The Court granted the parties' Stipulation on November 6, 2020, and Plaintiffs filed the Fourth Amended Complaint on November 12, 2020. *See* Dkts. 130, 131[1]. The Fourth Amended Complaint asserts claims for (1) failure to pay overtime and doubletime premium wages under California law; (2) pay stub violations; (3) unfair competition; (4) failure to timely pay final wages; (5) failure to pay minimum wages; (6) failure to provide legally compliant rest periods; (7) civil penalties under PAGA; (8) reporting-time violations; (9) failure to provide legally compliant meal periods; (10) failure to reimburse for business expenses; and (11) failure to pay split-shift premiums. *Id*.[1]

## IV. INVESTIGATION AND DISCOVERY

Prior to the order compelling Plaintiffs to individual arbitrations, the parties did not engage in class-wide discovery. Strauss Decl. at ¶ 29. However, Plaintiffs' Counsel conducted substantial investigations into the merits of their claims. Their investigations included interviews with dozens of TMs, most of whom were class members in *Martino*. *Id.* They also started off with the knowledge of Ecolab's wage-and-hour policies and practices that was obtained in the course of the *Martino* litigation. *Id.*

The depth of Plaintiffs' Counsel's knowledge substantially increased over the course of representing TMs in their individual arbitrations. For example, in Bankwitz's individual arbitration, Plaintiffs' Counsel deposed (1) multiple Fed. R. Civ. P. 30(b)(6) witnesses regarding Bankwitz's work performance and the general expectations of the TM position, (2) Ecolab's expert witness as to hours worked by Bankwitz, and (3) Bankwitz's supervisors. Strauss Decl. at ¶ 30. The parties also propounded multiple sets of requests for production of documents and interrogatories. *Id.* Ecolab produced over 6,000 pages of documents in this Action and Bankwitz's individual arbitration proceeding. *Id.* The parties also participated in multiple arbitration hearings: Plaintiff Bankwitz's individual three-day evidentiary hearing from July 24-26, 2019, as well as the multiple-day hearings for ten other individual TMs, including Plaintiff Jacobo, Stephen Craig, Mark Brewer, and seven

---

[1] The Strauss Declaration explains the legal theories and primary defenses for each of the Plaintiffs' claims. Strauss Decl. at ¶¶ 40-51.

additional TMs who completed evidentiary hearings but who did not receive final arbitration awards prior to reaching a settlement of their claims. *Id.* at ¶¶ 31-32. In each individual arbitration, the each party called multiple witnesses, exchanged multiple sets of discovery requests, produced thousands of pages of documents, and took multiple depositions in advance of the evidentiary hearings. *Id.*

In addition to the 11 individuals whom Plaintiffs' Counsel represented in arbitration evidentiary hearings, Plaintiffs' Counsel filed arbitration complaints on behalf of an additional 60 TMs (not including two which were filed and immediately withdrawn). Strauss Decl. at ¶ 19. In many of those cases, the parties conducted written discovery. *Id.* Counsel additionally defended depositions of six of those TMs. *Id.*

Finally, in connection with the mediation with Mr. Rudy, the parties exchanged information concerning the wages and hours of all TMs in California, including information provided to Plaintiffs' Counsel by Ecolab comprising workweek and payroll information for the PAGA Members and Class Members that was subject to cross-checking and analysis by Plaintiffs' Counsel. Strauss Decl. at ¶ 34.

## V. SUMMARY OF THE PROPOSED SETTLEMENT

### A. The Settlement Class.

The PAGA/Class Agreement proposes a Settlement Class (referred to in the PAGA/Class Agreement as the "Non-Claimant Settlement Class Members" and herein as the "Class Members" or "Settlement Class") that comprises:

> Plaintiffs Bankwitz and Jacobo and all other current and former Ecolab employees who worked as Territory Managers and/or Hospitality Territory Managers and/or Territory Sales Representatives in California at any time from May 22, 2013 through the date of preliminary approval of the PAGA/Class Agreement (the "Class Period"), except those who: (i) filed an arbitration complaint asserting the same or similar claims as Bankwitz and Jacobo that is presently pending and has not been adjudicated to a final award, dismissed, or resolved by an offer of compromise; (ii) accepted an offer of settlement of their individual claims and released their wage and hour claims against Ecolab; (iii) are individually represented by Plaintiffs' Counsel for purposes of pursuing their individual wage and hour claims but have not filed an arbitration complaint; or (iv) were hired as a Territory Sales Representative on or after January 5, 2020, and did not hold a Territory Manager or Hospitality Territory Manager position between May 22, 2013 and January 4, 2020. "Class Members" excludes any individual who participated in the settlement of the case entitled *Martino v. Ecolab*, U.S. District Court for the Northern District of California, Case No. 5:14-cv-04358, and whose claims are completely barred

by the *Martino* settlement.

Settlement at § III.C.1. This is the same definition that is used for the "Class" in the Fourth Amended Complaint. Doc. 131 at ¶ 15. The Settlement Class consists of 53 Class Members. Strauss Decl. at ¶ 24. Ecolab agrees to the certification of the Settlement Class for settlement purposes. Settlement at ¶ III.C.1.

The proposed Settlement also resolves Bankwitz's representative claim for civil penalties under PAGA, which will result in payment of PAGA penalties to be apportioned between the LWDA and "PAGA Members." Settlement at ¶ III.A. "PAGA Members" means current and former Ecolab employees who worked as Territory Managers and/or Hospitality Territory Managers and/or Territory Sales Representatives in California from May 18, 2016 through the date of preliminary approval ("PAGA Period") and who are represented by Bankwitz as potential aggrieved employees in the PAGA claim in the present litigation. *Id.* at ¶ I.A. There are approximately 231 PAGA Members; all of the Class Members are also PAGA Members. *Id.*

**B. Settlement terms.**

The principal terms of the Settlement are:

a. Defendant will pay a maximum settlement amount of Two Million Five Hundred Fifty Thousand Dollars ($2,550,000.00) (the "PAGA/Class Settlement Amount"). Settlement at ¶ II.A. This sum includes the payments to the Class Members to resolve their individual claims, PAGA penalties to PAGA Members and the LWDA, settlement administration costs, awards of attorneys' fees and costs, and incentive awards to the Settlement Class representatives. *Id.*

b. Subject to the Court's approval, Two Hundred Thousand Dollars ($200,000.00) (the "PAGA Penalties Portion") will be allocated from the PAGA/Class Settlement Amount as the payment required for settlement of claims under PAGA, and this amount will be designated as satisfaction of the PAGA claims in this action. *Id.* at ¶ III.A. Pursuant to PAGA, 75% of the approved PAGA Penalties Portion ($150,000.00) shall be paid to the LWDA ("LWDA Penalty Portion"), and 25% ($50,000.00) will be distributed to PAGA Members ("PAGA Member Portion"). *Id.*

c. Plaintiffs will seek, and Defendant will not object to, an award of attorneys' fees to Class Counsel not to exceed $735,000.00, and up to $150,000.00 in actual costs and expenses. *Id.* at ¶ IX.C.

d.       Plaintiffs will seek, and Defendant will not object to, incentive awards up to a maximum of $25,000.00 each for the Settlement Class representatives, Plaintiffs Bankwitz and Jacobo. *Id.* at ¶ IX.D. The Settlement Agreement explicitly relates that the settlement of the action is not contingent upon approval of incentive awards to the class representatives. *Id.*

e.       After allocation of the PAGA Penalties Portion, awards of attorneys' fees and costs, incentive awards to the Settlement Class representatives, and settlement administration costs, the remaining amount of the PAGA/Class Settlement Amount (no less than $1,406,500) will be disbursed to the 53 Class Members. *Id.* at ¶ II.B. This amount is designated in the Settlement Agreement as the "Non-Claimant Settlement Class Portion." *Id.*

f.       Calculation of Settlement Payments.

Each Class Member shall be allocated a share of the Non-Claimant Settlement Class Portion based upon the number of qualifying workweeks he/she worked during the relevant time period and his/her eligibility to recover a potential California Labor Code section 203 penalty based on former employee status (the "203 Factor"). Settlement at ¶ III.D.1. In addition, there is a settlement payment minimum of $500.00, so that under all circumstances each and every Class Member shall receive at least $500.00. *Id.* Accordingly, each payment to an individual Class Member shall be determined by allocating that individual's pro rata share of "Qualifying Workweeks," then by allocating a single $2,500.00 203 Factor to each eligible terminated/resigned individual, all subject to a $500.00 payment floor. *Id.* "Qualifying Workweeks" means the individual Class Member's active workweeks between May 22, 2013 during the Class Period, less any workweeks released as a class member in the *Martino* settlement, workweeks that occurred during any period covered by a final arbitration award (if the Class Member adjudicated claims in a prior arbitration), and workweeks covered by a California Code of Civil Procedure section 998 offer to compromise (if the Class Member accepted a section 998 offer to compromise to resolve an arbitration complaint), divided by the total Qualifying Workweeks as determined by Ecolab payroll data for the entire Settlement Class. *Id.*

Each PAGA Member, including Class Members who are also PAGA Members, shall receive a pro rata amount of the PAGA Member Portion based on their pro rata share of active workweeks (i.e., the individual PAGA Member's active workweeks during the PAGA Period divided by the total active

workweeks based on Ecolab payroll data).  *Id.* at III.D.2.

g.      The parties have selected Simpluris, Inc. as the Claims Administrator. Simpluris has provided a quote of $8,500 for its administration expenses.  Strauss Decl. at ¶ 72.

h.      The parties have agreed on a Notice of Class Settlement form to be mailed to the Class Members, which is attached to the Settlement as Exhibit A. The Notice of Class Settlement informs the Class Members of the essential terms of the Settlement, and their right to object thereto.

i.      The Claims Administrator will perform national change of address search before mailing the Notice of Class Settlement to Class Members.  Settlement at ¶ V.C.  The Claims Administrator will mail the Notice of Class Settlement by First Class Mail.  *Id.*

j.      Class Members will have forty-five (45) calendar days from the date the Notice of Class Settlement is mailed to postmark their objections or requests for exclusion, if any.  *Id.* at ¶¶ VI.A, VII.A. Class Members who choose to object to the Settlement may do so in writing by this deadline or appear at the Final Approval Hearing and present their objection(s) orally.  *Id.* at ¶ VII.B.

**C.  Settlement value.**

The settlement represents a compromise between the positions and evaluations of the two sides to this controversy. There were significant disagreements between the parties as to the facts and the law. As an example, the parties disagreed substantially on (1) whether Defendant properly classified the Class Members as exempt from California wage-and-hour laws pursuant to one or more of the claimed exemptions – namely, the outside salesperson exemption and commissioned salesperson exemption; (2) how the Court would calculate and apply any PAGA civil penalties; (3) how the court would calculate an applicable regular rate of pay and hours worked, in order to determine amounts applicable to overtime damages, if any; and (4) the impact of the varying degrees of success of the arbitrations held to date on the ability of Plaintiffs to litigate their PAGA claims on a representative basis.  *See* Strauss Decl. at ¶¶ 40-67.

The Settlement does not include any injunctive relief, and it is non-reversionary.  *Id.* at ¶ 28.

Plaintiffs valued the realistic amount of provable damages at around $3 million, exclusive of interest and attorney's fees. Strauss Decl. at ¶ 51.  Given the risks of litigation, the settlement of $2,550,000.00 represents a reasonable comprise. In essence, the participating Class Members will

receive (exclusive of their portion of the PAGA penalties) approximately $351 per week they worked in the relevant time period, plus a base payment of $500, a portion of the PAGA allocation, and, if their employment ended during the Class Period, a payment of $2,500, which represents a portion of potential Labor Code section 203 penalties. *Id.* at ¶ 69.

### D. Release of claims.

All Class Members who do not opt out of the settlement, in exchange for receiving their portion of the settlement monies, shall release, through the date of final approval of the Settlement, all wage and hour claims and damages, known or unknown, which were or could have been asserted in this action or in individual arbitrations, as provided in the Settlement (see ¶ XV.A). The claims to be released are co-extensive with those in the Fourth Amended Complaint.

Plaintiffs Bankwitz and Jacobo, all PAGA Members, and the State of California shall release all PAGA claims that were asserted or could have been asserted in any LWDA Notice, pleading, or complaint filed in connection with this action, up and until and including the date of Final Approval. *Id.* at ¶ XV.B.

In addition, in exchange for their participating in the Settlement and receipt of an incentive award, Plaintiffs Bankwitz and Jacobo shall generally release all claims, known and unknown, waiving the provisions of California Code of Civil Procedure section 1542, as set forth in the Settlement. *Id.* at ¶ XV.C.

## VI. LEGAL ARGUMENT

### A. The Settlement satisfies the standards for approval under Rule 23.

"[Rule 23] requires the district court to determine whether a proposed settlement is fundamentally fair, adequate, and reasonable." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). To determine whether a settlement agreement meets these standards, the court considers a number of factors, including "the strength of the plaintiff's case, the risk, expense, complexity, and likely duration of further litigation, the risk of maintaining class action status throughout trial, the amount offered in settlement, the extent of discovery completed, and the stage of the proceedings, the experience and views of counsel, the presence of a governmental participant, and the reaction of the class members to the proposed settlement." *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003)

(internal citations omitted). The settlement may not be a product of collusion among the negotiating parties. *In re Mego Fin, Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000) (citing *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1290 (9th Cir. 1992)). To the extent these factors are not subsumed by those of Rule 23(e)(2), the court must also consider the factors identified in that Rule. Fed. R. Civ. P. 23(e)(2) (advisory committee's note to 2018 amendment).

"At the preliminary approval stage, some of the factors cannot be fully assessed. Accordingly, a full fairness analysis is unnecessary." *Litty v. Merrill Lynch & Co.*, No. CV 14-0425 PA, 2015 WL 4698475, *8 (C.D. Cal. Apr. 27, 2015). Rather, the court need only decide whether the settlement is potentially fair, *Acosta v. Trans Union, LLC*, 243 F.R.D. 377, 386 (C.D. Cal. 2007), in light of the strong judicial policy in favor of settlement of class actions. *Class Plaintiffs*, 955 F.2d 1276. "[T]he court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Hanlon*, 15 F.3d at 1027.

Under these standards, the settlement meets the requirements for preliminary approval.

### 1. Extent of discovery and stage of the proceedings.

For a court to approve a proposed settlement, "[t]he parties must . . . have engaged in sufficient investigation of the facts to enable the court to intelligently make an appraisal of the settlement." *Acosta*, 243 F.R.D. at 396 (internal quotation marks omitted). Here, the work by Class Counsel includes drafting pleadings, an unsuccessful mediation, fighting Ecolab's motion to compel arbitration before and after *Epic Systems*, litigating the individual Plaintiffs' (and other TMs') claims in arbitration (which involved substantial discovery and motion practice), and investigation of tens of thousands of pages of documents, as well as the depositions of Plaintiffs, multiple other TMs, and Defendants' Fed. R. Civ. P. 30(b)(6) designees and other defense witnesses. Strauss Decl. at ¶¶ 29-38. Each side has a clear idea of the strengths and weaknesses of its respective cases, allowing the Court to conclude that the extent of discovery and the stage of proceedings weigh in favor of preliminary approval.

### 2. Amount offered in settlement.

In determining whether the amount offered in settlement is fair, a court compares the settlement

amount to the parties' estimates of the maximum amount of damages recoverable in a successful litigation. *In re Mego*, 213 F.3d at 459.

The gross settlement amount is $2,550,000. Plaintiffs' calculation of the maximum <u>non-PAGA</u> value of their claims is approximately $5,500,000. Strauss Decl. at ¶ 51. Plaintiffs' calculation of the maximum value of their PAGA claims is $6.9 million, although Ecolab disputes this calculation and believes the potential total PAGA penalties are significantly lower. *Id.* at ¶ 46. In discounting their exposure analysis, Plaintiffs had to consider the realistic potential of (1) proving that the TMs were not salespersons (though, technically, the burden is on Ecolab to prove the exemptions); (2) proving that the TMs worked overtime, including the amount of overtime, which Ecolab strongly disputes ; (3) proving the correct rate of overtime compensation, including the calculation of overtime on certain types of payments like commissions; (4) achieving and maintaining class certification on all claims; (5) recovering damages, including maximum PAGA penalties, under each of their theories; and (6) the degree of success achieved in arbitration. Strauss Decl. at ¶¶ 52-67.

Although the net settlement amount represents a fraction of the maximum value of this litigation, "[i]t is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair." *In re Mego*, 213 F.3d at 459 (quoting *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 628 (9th Cir. 1982)). In *In re Mego*, the Ninth Circuit considered the difficulties in proving the case and determined the settlement amount, which was one-sixth of the potential recovery, was fair and adequate. *Id*. Given the difficulties posed to each individual of pursuing his or her claim, the settlement amount (approximately one-fifth of the total estimated exposure) is fair.

### 3. *Strength of case and risk, expense, complexity, and likely duration of litigation.*

Several of these factors weigh in favor of preliminary approval. First, the outcome of this case is unpredictable. Indeed, the arbitrations concluded to date have had divergent results on liability on all claims asserted and on total damages awarded. Docs. 93 at 30-45 (Bankwitz award), 95 at 11-24 (Jacobo), 103 at 25-79 (Craig and Brewer). Litigation is unpredictable by nature, and this case presents many risks, making it even more unpredictable. Second, this Court has already once compelled the individual arbitration of the class claims asserted in this Action. If the case were to continue without a

settlement, only the PAGA action would remain in court, with the remaining TMs having to litigate their claims in arbitration. Third, the Covid-19 crisis has caused significant delays in all litigation, so this case (and the individual arbitrations were they to be recommenced) could last many more months or years until final conclusion. Fourth, Ecolab could always appeal unfavorable rulings. As a large public company, Ecolab has the resources to litigate the case on appeal. Fifth, litigation is very expensive to all parties involved in the proceedings. Were this case to continue, the costs of litigation would skyrocket. Sixth, there is a potential difficulty of maintaining the suit as a class action and PAGA action, since Ecolab would contest class certification and manageability of any PAGA action. Finally, there is a risk of incurring expense of trial without recovery, given that Ecolab has denied and continues to deny each and all of the claims alleged, and asserts it complied in good faith with California wage-and-hour laws. Overall, these factors weigh in favor of preliminary approval.

### 4. *Experience and views of counsel.*

"Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004) (internal citation and quotation marks omitted). Here, the parties reached settlement after review of their claims and defenses (as performed by various arbitrators), with the assistance of a mediator. Plaintiffs' Counsel recommends the settlement. Strauss Decl. at ¶ 99; Declaration of Daniel J. Palay ("Palay Decl.") at ¶ 9; Declaration of Alejandro P. Gutierrez ("Gutierrez Decl.") at ¶ 11; Declaration of Brian D. Hefelfinger ("Hefelfinger Decl.") at ¶ 7. Accordingly, this factor weighs in favor of preliminary approval.

### 5. *Collusion between the parties.*

"To determine whether there has been any collusion between the parties, courts must evaluate whether 'fees and relief provisions clearly suggest the possibility that class interests gave way to self interests,' thereby raising the possibility that the settlement agreement is the result of overt misconduct by the negotiators or improper incentives for certain class members at the expense of others." *Litty*, 2015 WL 4698475, at *10 (quoting *Staton*, 327 F.3d at 961).

As an initial matter, the settlement negotiations were conducted at arms-length. The parties engaged in a mediation with an experienced and respected mediator, Mark Rudy. Strauss Decl. at ¶¶

21, 23. The use of a mediator experienced in the settlement process tends to establish that the settlement process was not collusive. *See, e.g., Satchell v. Fed Ex. Corp.*, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007).

The financial terms of the Settlement also do not reflect any collusion between the parties. Plaintiffs seek service enhancements of up to $25,000.00 each for Bankwitz and Jacobo. These amounts are not per se excessive, since this Court and others have made service awards up to and above that amount. *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 300 (N.D. Cal. 1995) (incentive award of $50,000); *Ladore v. Ecolab, Inc.*, No. CV 11-9386 FMO (JCX), 2013 WL 12246339, at *8 (C.D. Cal. Nov. 12, 2013) (incentive award of $25,000 to one of two class representatives); *In re Wells Fargo & Co. S'holder Derivative Litig.*, 445 F. Supp. 3d 508, 534 (N.D. Cal. 2020) (incentive awards to two plaintiffs of $25,000 each); *Waldbuesser v. Northrop Grumman Corp.*, No. CV 06-6213-AB (JCX), 2017 WL 9614818, at *8 (C.D. Cal. Oct. 24, 2017) (incentive awards of $25,000 to each of four lead plaintiffs); *see also Ladore v. Ecolab, Inc.*, No. CV 11-9386 FMO (JCX), 2013 WL 12246503, at *9 (C.D. Cal. Aug. 2, 2013) (preliminarily approving settlement allocating up to $25,000 to class representative, finding that the requested award does not call into question the adequacy of the plaintiff's representation of the class); *Staton*, 327 F.3d at 976 (citing approvingly to a Seventh Circuit case approving incentive award of $25,000 in the context of a multi-million-dollar settlement).

Plaintiffs provided great service to their counsel. Declaration of Robert Bankwitz ("Bankwitz Decl.") at ¶¶ 11-12; Declaration of William Jacobo ("Jacobo Decl.") at ¶¶ 8-9. The amount of the requested enhancement payments is less than the $31,089 average recovery of the Class Members. Strauss Decl. at ¶ 69.e; *see Radcliffe v. Experian Info. Solutions Inc.*, 715 F.3d 1157, 1165 (9th Cir. 2013) ("[C]oncerns over potential conflicts may be especially pressing where ... the proposed service fees greatly exceed the payments to absent class members.") (internal quotation marks and citation omitted). Finally, a conditional incentive award can create a conflict of interest with the class, *Radcliffe*, 715 F.3d at 1161, but the Settlement here explicitly states that it is "not contingent upon approval of the full amount of the requested service payment, and a Court order granting no service payment or a service payment in a lesser amount shall not invalidate the PAGA/Class Agreement." Settlement at § IX.D.

For these reasons, the requested service awards do not evidence collusion between the parties

1    sufficient to deny preliminary approval.

2        The amount of attorney's fees sought by Plaintiffs' Counsel does not suggest collusion either.

3    Generally, courts in the Ninth Circuit find that a benchmark of 25% of the common fund is a reasonable

4    fee award. *Hanlon*, 150 F.3d at 1029.   The benchmark may be adjusted upward based on the

5    circumstances in the case. *Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311

6    (9th Cir. 1990).  The Court, in its discretion, may award attorneys' fees in a class action by applying

7    either the lodestar method or the percentage-of-the-fund method. *Fischel v. Equitable Life Assurance*

8    *Soc'y of U.S.*, 307 F.3d 997, 1006 (9th Cir. 2002). The Court determines the lodestar amount by

9    multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate.

10   *McGrath v. Cnty. of Nev.*, 67 F.3d 248, 252 (9th Cir. 1995).

11       Here, Plaintiffs' Counsel plan to petition for attorney's fees not to exceed $735,000.00

12   (approximately 30% of the total PAGA/Class Settlement Amount).  A potential fee award of up to 30

13   percent is not presumptively unreasonable or indicative of collusion.  *See Waldbuesser*, 2017 WL

14   9614818, at *6 (awarding fees of 33 1/3% of multi-million-dollar settlement).  Besides, any amounts

15   not awarded to counsel for their fees (or to the class representatives as service payments) will increase

16   the net settlement amount to be distributed to the Class Members.  Settlement at ¶ IX.E.

17       The requested fee award also compares favorably to Plaintiffs' Counsel's lodestar.  At this point,

18   Plaintiff's Counsel have incurred approximately $250,000.00 in fees strictly in relation to this case.

19   Strauss Decl. at ¶ 92.[2]  Much of the work that formed the basis of this settlement was performed in the

20   individual arbitrations for Messrs. Bankwitz and Jacobo.  In those cases, the arbitrators did not award

21   all of the fees incurred by Plaintiffs' Counsel.  In *Bankwitz*, counsel incurred $483,112.50 in fees, but

22   the arbitrator awarded only $139,426.  *Id.* at ¶ 92.  In *Jacobo*, counsel incurred $496,212.50 in fees, but

23   the arbitrator awarded only $136,000.  *Id.*  If this Court were to apply the un-awarded fees from *Bankwitz*

24   and *Jacobo* to the lodestar fees incurred solely in the litigation of this federal court action, Plaintiffs'

25   Counsel's lodestar would be $953,709.  *Id.* at ¶ 94.  So, assuming the Court were to use the $250,000

26   figure as Plaintiffs' counsel's lodestar, the lodestar would have to be adjusted upwards with a multiplier

27

28   [2] The declarations of each of Plaintiffs' Counsel explain the rates at which they seek approval of their fees and the bases for their rates.  The Strauss Declaration summarizes the rates and hours incurred by each lawyer.  Strauss Decl. at ¶ 92.

of 2.94 to equal the 30-percent fee request. On the other hand, were the Court to use the $953,709 lodestar figure, which uses all un-awarded fees to date in the *Bankwitz* and *Jacobo* arbitrations and in the federal court action, the multiplier would be 0.77. Either way, the lodestar cross-check would support the requested fees of 30 percent. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1051 (9th Cir. 2002) (approving multiplier of 3.65 and citing recent cases approving multipliers as high as 9.6). Thus, the requested fee award of 30 percent is not indicative of collusion and does not warrant the denial of preliminary approval of the Settlement.

The Settlement allows Plaintiffs to seek up to $150,000 in reimbursable costs. Currently, Plaintiffs' costs are only $20,917.07. Strauss Decl. at ¶ 95. They include court filing fee of $402, $9,637.50 in expert witness fees, $10,000 for mediation fees, $196.61 for delivery of papers to the Court, $75 for a PAGA filing fee, $140 for parking fees, and $465.96 in travel costs. *Id.* Plaintiffs will submit a full accounting of their costs in connection with their motion for final approval.

### 6. The Settlement treats all class members equitably.

The Settlement does not unfairly grant preferential treatment to any Class Member. The parties have also carefully constructed a formula for payments to Settlement Class Members to ensure an equitable distribution of the settlement funds based objective criteria, including, without limitation, their status as a current or former employee and the number of workweeks they worked during the relevant time period. Settlement at ¶ III.D.1.

### 7. Other factors.

In addition to the factors discussed above, the Court may consider the risk of maintaining class action status throughout the trial, the presence of a governmental participant, and the reaction of the class members to the proposed settlement. *Staton*, 327 F.3d at 959 (internal citations omitted). At this stage, the Court cannot fully analyze the remaining factors. For example, there is no governmental participant in this Action; while the LWDA has been informed of the proposed Settlement, it has not actively participated. Additionally, the Settlement Class Members have yet to receive notice of the Settlement and have not had an opportunity to comment or object to its terms. Plaintiffs will present the court with the reaction of notified Class Members at the final approval stage.

On balance, the factors support preliminary approval of the Settlement. The Settlement is potentially fair, adequate, and reasonable.

**B.  Conditional certification of the class is appropriate.**

Before granting preliminary approval of a settlement, the Court must determine that the proposed Settlement Class is a proper class for settlement purposes. *See generally* Fed. R. Civ. P. 23(e). Courts routinely and properly certify classes for settlement purposes only and the proposed certification of the Settlement Class in this case is entirely consistent with the applicable authorities. *Amchem Prods. Inc. v.* Winsor, 521 U.S. 591, 619-29 (1997). Certification of a class under Rule 23 requires numerosity, commonality, typicality, and adequacy. Fed. R. Civ. P. 23(a). All four elements are satisfied here. In fact, this Court previously certified a class of TMs for substantially the same wage-and-hour claims. *Martino v. Ecolab, Inc.*, No. 14-CV-04358-PSG, 2016 WL 614477, at *1 (N.D. Cal. Feb. 16, 2016).

   ***1.  The Settlement Class is sufficiently numerous.***

The numerosity requirement mandates that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). The Ninth Circuit has required at least fifteen members to certify a class, and courts have certified classes smaller than the class requested here. *Harik v. Cal. Teachers Ass'n*, 326 F.3d 1042, 1051 (9th Cir. 2003); *Jensen v. SECORP Indus.*, No. 2:18-CV-02890-RGK-GJS, 2018 WL 5961287, at *2 (C.D. Cal. Aug. 23, 2018) (certifying class of 31 persons in wage-and-hour case). As described above, approximately 53 persons fit the class definition in the Settlement and the Fourth Amended Complaint. This is sufficient to satisfy numerosity requirements.

   ***2.  Questions of law or fact are common to the class.***

The commonality requirement requires that there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "A class has sufficient commonality 'if there are questions of fact and law which are common to the class." *Hanlon*, 150 F.3d at 1019. The commonality requirement should be "construed permissively," meaning that "[a]ll questions of fact and law need not be common to satisfy the rule. The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Id.* Here, Plaintiffs allege that all putative class members were subject to the same wage-and-hour policies and practices, which resulted in class-wide violations of the Labor Code—for example, that the putative class were

each subject to the same written compensation policy, were each subject to the same classification as exempt salespersons, each worked in excess of forty hours a week without receiving overtime compensation, and each received wage statements of the same format containing the same information. Strauss Decl. at ¶ 97; *Martino*, 2016 WL 614477, at *5. The commonality requirement is met.

### 3. The Class Representatives' claims are typical of the class.

The next requirement of Rule 23(a) is typicality, which focuses on the relationship of facts and issues between the class and its representatives. "[R]epresentative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020. "Like the commonality requirement, the typicality requirement is 'permissive' and requires only that the representative's claims are 'reasonably co-extensive with those of absent class members; they need not be substantially identical." *Rodriguez v. Hayes,* 591 F.3d 1105, 1124 (9th Cir. 2010). Here, Plaintiffs represent all putative class members who were not properly compensated during the Class Period due to the same unlawful policies and practices of Ecolab, e.g., its class-wide practice of not paying overtime premiums. Strauss Decl. at ¶ 98. Accordingly, Plaintiffs' claims are typical of those of the Settlement Class Members.

### 4. The Class Representatives and their counsel will fairly and adequately protect the Class Members' interests.

Rule 23(a)(4) requires that the Class Representatives "fairly and adequately protect the interests of the class." Rule 23(g) requires the Court to consider Class Counsel's prior experience, knowledge and ability to properly represent the Class.

Here, Plaintiffs Bankwitz and Jacobo will fairly and adequately protect the interests of the Settlement Class Members. They have no conflicts of interest with the other Settlement Class Members and do not seek any different relief than that they seek on behalf of Settlement Class Members. Additionally, Plaintiffs are committed to the action and have devoted time to assisting counsel with the action, providing documents and reviewing pleadings. Bankwitz Decl. at ¶¶ 11-12; Jacobo Decl. at ¶¶ 8-9. Plaintiffs have no interests that are antagonistic to other Settlement Class Members. Bankwitz Decl. at ¶ 16; Jacobo Decl. at ¶ 13. Because the Plaintiffs will fairly and adequately protect the interests of the Class and because they have no conflicts of interest with the other Settlement Class Members, the

Court should appoint Robert Bankwitz and William Jacobo as Class Representatives for purposes of the Settlement.

"An order certifying a class action ... must appoint class counsel under Rule 23(g)." Fed. R. Civ. P. 23(c)(1)(B). Courts must consider counsel's work in identifying or investigating claims; counsel's experience in handling the types of claims asserted; counsel's knowledge of applicable law; and the resources counsel will commit to representing the class. Fed. R. Civ. P. 23(g)(1)(A). Here, Plaintiffs' Counsel have vast experience handling wage and hour cases, know the applicable law, and are committed to representing the Class Members. Strauss Decl. at ¶ 77; Gutierrez Decl. at ¶¶ 3-4; Palay Decl. at ¶ 4; Hefelfinger Decl. at ¶ 5. Plaintiffs' Counsel were appointed class counsel in *Martino*. *Martino*, 2016 WL 614477, at *11. Accordingly, the Court should appoint the law firms of Strauss & Strauss, APC; Hathaway, Perrett, Webster, Powers, Chrisman & Gutierrez, APC; and Palay Hefelfinger APC to represent the class as Class Counsel for purposes of the Settlement.

### 5. *Common questions of law and fact predominate.*

Rule 23(b)(3) requires the Court to find that: "the questions of law or fact common to class members predominate over any questions affecting only individual members." The predominance "inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Hanlon*, 150 F.3d at 1022 (quoting *Amchem Prods.*, 521 U.S. at 623). Here, Plaintiffs identified several questions of law and fact common to their claims and to those of the putative class. Among other things, Plaintiffs allege that the TM job position varied little across the state, and that Ecolab applied common timekeeping, payroll, and other policies to all TMs. *Id.* The key question is whether the TMs are exempt under the outside sales and/or the commissioned salesperson exemptions. Likewise, the fact that the Settlement affords all Class Members an equal opportunity to obtain compensation for identical claims via a standardized process provides further support for the conclusion that common issues of law and fact predominate and that the claims are amenable to class-wide resolution. *See Amchem Prods.*, 521 U.S. at 619 (rejecting the Third Circuit's holding that the requirements of Rule 23 "must be satisfied without taking into account the settlement," and finding instead that "settlement is relevant to a class certification.").

### 6. *A class action is superior to alternative methods.*

Given that Plaintiffs seek certification for settlement purposes only, class treatment is also the superior method for resolving all claims. "Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, Fed. Rule Civ. Proc. 23(b)(3)(D), for the proposal is that there be no trial." *Amchem*, 521 U.S. at 620.

Resolving the claims on a class basis would (1) accomplish judicial economy by avoiding multiple suits, and (2) protect the rights of persons who might not be able to present claims on an individual basis. *See generally Crown, Cork & Seal Co. v. Parker,* 462 U.S. 345 (1983). Resolving all Class Members' claims through a single class action is superior to a series of individual lawsuits. "From either a judicial or litigant viewpoint, there is no advantage in individual members controlling the prosecution of separate actions. There would be less litigation or settlement leverage, significantly reduced resources and no greater prospect for recovery." *Hanlon,* 150 F.3d at 1023. Here, as discussed above, Plaintiff and the putative class were all subject to the same policies, practices and procedures. The straightforward relief sought (premium wages calculated based on data readily shared by Ecolab), and the evidence bearing thereon, is markedly less complicated than other cases where multiple working locations necessarily lends itself to disparate enforcement of policies.

### C. The proposed class notice should be approved.

Pursuant to Rule 23(e), district courts must "direct notice in a reasonable manner to all class members who would be bound" by the proposed settlement. *See* Fed. R. Civ. P. 23(e)(1)(B). Regarding Rule 23(b)(3) classes:

> the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice may be by one or more of the following: United States mail, electronic means, or other appropriate means. The notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B) (reformatted for style herein). As such, the rule requires that "[i]ndividual notice must be sent to all class members whose names and addresses may be ascertained through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). In addition, due process mandates that the "notice must be 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *See id.* at 174 (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)). Class notice "is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004).

In this case, the proposed Notice of Class Settlement is the "best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." *See* Fed. R. Civ. P. 23(c)(2)(B). The Notice will be mailed to all Class Members at their last known address on file with Defendant, or to the address updated by the Settlement Administrator following searches in the National Change of Address database. Settlement at ¶ V.B-C. The method of Notice is substantially the same as that in previous cases involving Ecolab, where the classes had 100-percent participation rates. Strauss Decl. at ¶ 73. The Notice will disclose the total net amount of the class settlement and will include instructions for requesting exclusion from the class or objecting to the terms of the settlement. *See* Settlement at ¶¶ VI.A, VII, and Ex. A. Finally, the Notice includes all the information required by Rule 23(c)(2)(B), and contains the same or substantially the same language as that recommended in the Northern District of California's Procedural Guidance for Class Action Settlements. For these reasons, Plaintiffs request that the Court approve the proposed Notice of Class Settlement.

### D. The Court should appoint Simpluris as Claims Administrator.

The parties propose that, subject to the Court's approval, Simpluris administer the Settlement. Simpluris has served as the Claims Administrator for some of Plaintiffs' Counsel's other class action settlements. Strauss Decl. at ¶ 72. Simpluris performed their administration duties professionally and efficiently, and their proposed fees are reasonable. *Id.* Counsel obtained bids from three other potential administrators, in the end selecting Simpluris based on their cost and quality. *Id.*

**E. Plaintiffs request approval of the PAGA settlement.**

"An employee bringing a PAGA action does so as the proxy or agent of the state's labor law enforcement agencies, ... who are the real parties in interest." *Sakkab v. Luxottica Retail N. Am. Inc.*, 803 F.3d 425, 435 (9th Cir. 2015) (internal citations omitted). Because a PAGA action is brought as a proxy for law enforcement agencies, "[t]here is no requirement that the Court certify a PAGA claim for representative treatment like in Rule 23 ...." *Villalobos v. Calandri Sonrise Farm LP*, No. CV 12-2615 PSG, 2015 WL 12732709, at *5 (C.D. Cal. July 22, 2015). Nevertheless, the "court shall review and approve any settlement of any civil action filed" pursuant to PAGA. Cal. Lab. Code § 2699(l)(2).

There are several factors to be considered in approving a PAGA settlement, the first of which is to ensure that the "proposed settlement [was] submitted to the agency at the same time that it [was] submitted to the court." *Id.* This was done here. Strauss Decl. at ¶ 26. Next, this Court generally evaluates the factors in *Hanlon*, 150 F.3d at 1026. *See O'Connor v. Uber Techs.*, 201 F. Supp. 3d. 1110, 1134 (N.D. Cal. 2016). As discussed above, the Settlement meets the applicable *Hanlon* factors, including that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned. With respect to the PAGA portion of the Settlement only, the only *Hanlon* factors that need further elaboration are the existence of a governmental participant and the amount offered in settlement.

First, the only potential governmental participant here is the LWDA—which has been informed of the proposed settlement but has not otherwise participated in this Action. In May 2017, Plaintiffs gave written notice of their intent to pursue civil penalties against Ecolab. Strauss Decl. at ¶ 26. After the case resolved, Plaintiffs provided a copy of the Settlement to the LWDA, informing the agency in the same transaction that the Court would hold a preliminary approval hearing on January 7, 2021. The LWDA has not yet participated in the case. If the LWDA eventually chooses to participate in the Settlement, the Court can reweigh this *Hanlon* factor. As of now, however, the lack of a governmental participant favors approval of the PAGA settlement.

Second, the amount offered in settlement of the PAGA claims is reasonable. The value of the PAGA portion of this case is approximately $6.9 million. Strauss Decl. at ¶ 46. The parties have allocated toward PAGA penalties $200,000 out of the $2,550,000 settlement. Settlement at ¶ III.A. Of

the $200,000 PAGA allocation, 75 percent ($150,000) will be paid to the LWDA. *Id.* The remaining 25 percent ($50,000) will be distributed on a pro rata basis (based on workweeks) to all TMs who worked for Ecolab in California during the period of May 18, 2016 through the date of preliminary approval. *Id.* at ¶¶ I.A and III.A. There are approximately 231 such individuals. *Id.* at ¶ I.A.

The amount offered in settlement for PAGA penalties is reasonable. Although the allocation of $200,000 out of a $2,550,000 settlement may appear small, courts have routinely approved PAGA settlements with much smaller allocations. This is because the purpose of PAGA is to provide a procedure for private enforcement of the labor laws, not to receive damages or restitution. *See Brown v. Ralph's Grocery Co.*, 197 Cal. App. 4th 489, 501 (2011) ("The purpose of the PAGA is not to recover damages or restitution."); *Cunningham v. Leslie's Poolmart, Inc.*, No. CV 13-2122 CAS CWX, 2013 WL 3233211, at *6 (C.D. Cal. June 25, 2013) ("The purpose is not to collect damages on behalf of other employees or provide restitution to victims of Labor Code violations."). Indeed, a court does not abuse its discretion by approving a settlement that allocates ZERO of the settlement recovery to PAGA claims. *Nordstrom Commission Cases*, 186 Cal. App. 4th 576, 589 (2010). Here, the allocation for PAGA penalties is a fair and reasonable compromise of the PAGA penalties.

In *Villacres v. ABM Industries Inc.*, 117 Cal. Rptr. 3d 398 (2010), the plaintiff brought a complaint against the defendant for only PAGA penalties. Previously, the defendant had been sued in a case that was settled for $2.5 million dollars and approved by the trial court. On appeal, the court focused on potential res judicata issues involving the PAGA claims. However, in discussing the case, the Court stated that a trial court can approve a PAGA settlement even if the amount allocated to civil penalties is zero. It stated that it did not matter if "none of the settlement proceeds … were allocated to PAGA" in the 2.5-million-dollar settlement. *Id.* at 587.

Similarly, many trial courts have also dealt with PAGA settlement approvals often approving PAGA payments that are less than one percent of the total settlement value. *See, e.g., Hopson v. Hanesbrands Inc.*, No. CV-08-0844 EDL, 2009 WL 928133, at *9 (N.D. Cal. Apr. 3, 2009) (approving a PAGA settlement of 0.003% or $1,500 of the total settlement as it was in good faith); *Franco v. Rut Food Prods., Inc.*, No. l:10-cv-02354-SKO, 2012 WL 5941801, at *14 (E.D. Cal. Nov. 27, 2012) (approving PAGA penalties of $10,000 (75% to the state) as part of $2.5 million settlement, 0.004%);

*Garcia v. Gordon Trucking*, No. 1:10-CV-0324-AWI-SKO, 2012 WL 5364575, at *3 (E.D. Cal. Oct. 31, 2012) (approving PAGA settlement payment of $10,000 out of the $3.7 million settlement, 0.0027%); *Chu v. Wells Fargo Investments, LLC*, Nos. C 05-4526 MHP, C 06-7924 MHP, 2011 WL 672645, at *1 (N.D. Cal. Feb. 16, 2011) (approving PAGA settlement payment of $7,500 to LWDA out of $6.9 million settlement, 0.001%).

Here, the LWDA was given the opportunity to investigate this matter after being given notice, but declined to do so. On behalf of the LWDA, Plaintiffs negotiated a substantial PAGA settlement allocation of $200,000. As detailed above, there were many factors that came into play when deciding to enter into the settlement. The Settlement provides for the release of only PAGA claims by those who receive a portion of the PAGA allocation. Settlement at ¶ XV.B. Collectively, this is a fair and sufficient settlement and allocation. *See McLeod v. Bank of America, N.A.*, No. 16-cv-03294-EMC, 2018 WL 5982863 (N.D. Cal. Nov. 14, 2018) (granting preliminary approval of proposed settlement allocating $50,000 to PAGA penalties where maximum value of PAGA claim was estimated at $4.7 million).

**F. Proposed schedule for remaining procedures.**

Plaintiffs propose the following schedule for final approval, assuming preliminary approval is granted on January 7, 2021:

| | |
|---|---|
| PRELIMINARY APPROVAL HEARING | January 7, 2021 |
| Ecolab to provide Class contact information to Simpluris (25 calendar days from entry of order) – Settlement at ¶ V.B | February 1, 2021 |
| Simpluris to mail Notice of Class Settlement packets (15 calendar days from receipt of information) – Settlement at ¶ V.C | February 16, 2021 |
| Settlement Class Members to possibly opt-out or object (45 calendar days from mailing) – Settlement at ¶ VI.A | April 2, 2021 |
| Motion for final approval due | April 29, 2021 |
| FINAL APPROVAL HEARING (proposed) | June 3, 2021 at 1:30 pm |

**VII.  CONCLUSION**

Plaintiffs, on behalf of themselves and the Settlement Class, respectfully request the Court to

/ / /

/ / /

1  grant the within motion for preliminary approval of the class and PAGA Settlement.

2  Date:  December 3, 2020                    **STRAUSS & STRAUSS, APC**

3                                             By: */s/ Michael A. Strauss*
4                                                 Michael A. Strauss
                                                  Attorneys for Plaintiffs and the Class
5

| Summary report: Litera® Change-Pro for Word 10.4.0.0 Document comparison done on 12/2/2020 10:18:20 AM | |
|---|---|
| **Style name:** JD Color | |
| **Intelligent Table Comparison:** Inactive | |
| **Original DMS:** iw://NAI/NAI/1515105754/1 | |
| **Modified DMS:** iw://NAI/NAI/1515105754/4 | |
| **Changes:** | |
| Add | 342 |
| Delete | 368 |
| Move From | 0 |
| Move To | 0 |
| Table Insert | 0 |
| Table Delete | 0 |
| Table moves to | 0 |
| Table moves from | 0 |
| Embedded Graphics (Visio, ChemDraw, Images etc.) | 0 |
| Embedded Excel | 0 |
| Format changes | 0 |
| **Total Changes:** | 710 |