Alejandro P. Gutierrez, SBN 107688
agutierrez@hathawaylawfirm.com
**HATHAWAY, PERRETT, WEBSTER, POWERS,**
**CHRISMAN & GUTIERREZ, APC**
5450 Telegraph Rd., Ste 200, Ventura, CA 93006-3577
Tel: (805) 644-7111; Fax: (805) 644-8296

Daniel J. Palay, SBN 159348
djp@calemploymentcounsel.com
Brian D. Hefelfinger, SBN 253054
bdh@calemploymentcounsel.com
**PALAY HEFELFINGER, APC**
1746 S. Victoria Ave., Ste 230, Ventura, CA 93003
Tel: (805) 628-8220; Fax: (805) 765-8600

Michael A. Strauss, SBN 246718
mike@strausslawyers.com
Andrew C. Ellison, SBN 283884
andrew@strausslawyers.com
**STRAUSS & STRAUSS, APC**
226 W. Ojai Ave., Ste 101-325, Ojai, CA 93023
Tel: (805) 641-6600; Fax: (805) 641-6607

**Counsel for Plaintiffs and the Putative Class**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT BANKWITZ, an individual; WILLIAM JACOBO, an individual; on behalf of themselves and other persons similarly situated,<br><br>        Plaintiffs,<br><br>    v.<br><br>ECOLAB INC., a Delaware corporation; and DOES 1 through 100, inclusive,<br><br>        Defendants. | Case No. 3:17-cv-02924-EMC<br><br><u>CLASS ACTION</u><br><br>**NOTICE OF MOTION AND MOTIONS FOR FINAL APPROVAL OF CLASS ACTION AND PRIVATE ATTORNEYS GENERAL ACT SETTLEMENT, FOR ATTORNEYS' FEES AND COSTS, AND FOR CLASS REPRESENTATIVE SERVICE ENHANCEMENTS**<br><br>HEARING:<br>Date:    June 24, 2021<br>Time:    1:30 p.m.<br>Place:   Courtroom 5, 17th Floor<br>           450 Golden Gate Avenue<br>           San Francisco, CA 94102 |

TO DEFENDANT AND ITS ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on June 24, 2021, at 1:30 p.m., or as soon thereafter as the matter may be heard before the Honorable Edward M. Chen, at Courtroom 5, 17th Floor, 450 Golden Gate Avenue, San Francisco, CA 94102, Plaintiffs Robert Bankwitz and William Jacobo ("Plaintiffs") will and hereby do move the Court pursuant to Federal Rule of Civil Procedure 23 for an Order:

1. Granting final approval of the parties' Labor Code Private Attorneys General Act and Class Action Settlement and Release Agreement ("Settlement" or "PAGA/Class Agreement," attached as Exhibit 1 to this Motion);

2. Directing the parties to perform their obligations as set out in the Settlement;

3. Dismissing with prejudice all claims set forth in Plaintiffs' operative complaint on behalf of Plaintiffs, the Class Members, and the PAGA Members, and the release of all Released Claims set forth in Sections XV(A) and XV(B) of the Settlement Agreement;

4. Awarding attorneys' fees and costs, and Plaintiff Service Enhancements as requested; and

5. Retaining jurisdiction over the case and the parties to the extent necessary to implement the terms of the Settlement until each act agreed to be performed by the Parties under the Settlement has been fully performed.

This motion is *unopposed* by Defendant Ecolab Inc.

This motion is brought pursuant to Rule 23 of the Federal Rules of Civil Procedure and the Court's Preliminary Approval Order (Dkt. Nos. 143 and 150). The motion will be based on this Notice, the operative complaint in this action, the Memorandum of Points and Authorities filed herewith, the Settlement, the declarations filed herewith in support of this motion and the Motion for Preliminary Approval, the Proposed Order filed with this motion, and on the other pleadings and memoranda in this matter and such further evidence and argument as may be presented at or before the hearing on this Motion.

This motion is made following the completion of the class notice process whereby the Claims Administrator mailed the Class Notice to all persons identified as Class Members by First Class Mail

on March 3, 2021.

Date:  May 13, 2021                    STRAUSS & STRAUSS, APC


                            By: */s/ Michael A. Strauss*
                                Michael A. Strauss
                                Attorneys for Plaintiffs and the Putative Class

# **TABLE OF CONTENTS**

I.  INTRODUCTION ................................................................................................ 1

II.  FACTUAL AND PROCEDURAL BACKGROUND ..................................................... 1

   A.  Settlement Agreement..................................................................................... 1

   B.  Updates Since Preliminary Approval ............................................................... 3

III.  MOTION FOR FINAL APPROVAL ..................................................................... 4

   A.  Class Certification ........................................................................................... 4

   B.  Final Approval ................................................................................................. 5

   C.  Proposed Award of Attorneys' Fees and Response of the Class ....................... 6

   D.  Conclusion ...................................................................................................... 7

IV.  MOTION FOR ATTORNEYS' FEES ..................................................................... 7

   A.  Legal Standard ................................................................................................ 7

   B.  The results obtained for the Settlement Class are excellent. ........................... 8

   C.  The degree of risk in this litigation was high.................................................... 8

   D.  Class Counsel are highly experienced and skilled........................................... 10

   E.  Counsel spent four years litigating this case on a contingent basis. ............... 11

   F.  The requested percentage of the fund of 25 percent is in line with the market rate. ............... 12

   G.  The reaction of the Settlement Class supports the requested fee award. ................... 12

   H.  A lodestar cross-check confirms the reasonableness of the requested fee award..................... 13

      a.  Class Counsel's hours are reasonable. ........................................................ 13

      b.  Class Counsel's rates are reasonable. .......................................................... 14

      c.  An upward lodestar multiplier is warranted. ............................................... 19

V.  REQUEST FOR REIMBURSEMENT OF COSTS ..................................................... 20

VI.  REQUEST FOR PLAINTIFF ENHANCEMENT AWARDS......................................... 20

VII.  PAYMENT TO CLAIMS ADMINISTRATOR ....................................................... 23

VIII. CONCLUSION............................................................................................... 24

# <u>TABLE OF AUTHORITIES</u>

**CASES**

*Aguilar v. Zep Inc.*,
  No. 13-CV-00563-WHO, 2014 WL 4063144 (N.D. Cal. Aug. 15, 2014) ................... 15, 16, 18

*Allen v. Bedolla*,
  787 F.3d 1218 (9th Cir. 2015) ........................................................................................ 5

*Barbosa v. Cargill Meat Solutions Corp.*,
  297 F.R.D. 431 (E.D. Cal. Jul. 2, 2013) ........................................................... 11, 20

*Bellinghausen v. Tractor Supply Co.*,
  306 F.R.D. 245 (N.D. Cal. 2015) ...................................................................... 17, 18, 22

*Bohannon v. Facebook, Inc.*,
  No. 12-CV-01894-BLF, 2016 WL 3092090 (N.D. Cal. June 2, 2016) ..................................... 16

*Brinker v. Normandin's*,
  No. 14 CV 03007 EJD HRL, 2017 WL 713554 (N.D. Cal. Feb. 23, 2017) ............................. 15

*Camacho v. Bridgeport Financial, Inc.*,
  523 F.3d 973 (9th Cir. 2008) ................................................................................. 13, 14

*Campbell v. National Passenger R.R. Corp.*,
  718 F. Supp. 2d 1093 (N.D. Cal. 2010) ........................................................................ 16

*Caudle v. Sprint/United Mgmt. Co.*,
  No. C 17-06874 WHA, 2019 WL 6841239 (N.D. Cal. Dec. 16, 2019) ........................ 15, 17, 18

*Craft v. Co. of San Bernardino*,
  624 F. Supp. 2d 1113 (C.D. Cal. 2008) ........................................................................ 13

*Davis v. Prison Health Servs.*,
  No. 09-cv-2629 SI, 2012 WL 4462520 (N.D. Cal. Sept. 25, 2012) ......................................... 16

*Dennis v. Kellogg Co.*,
  697 F.3d 858 (9th Cir. 2012) ..................................................................................... 8

*Franco v. Ruiz Food Prods., Inc.*,
  No. 1:10-cv-02354-SKO, 2012 WL 5941801 (E.D. Cal. Nov. 27, 2012) ................................ 11

*Fuller v. Zep, Inc.*,
 No. 4:18-cv-02672-JSW (N.D. Cal. Jan. 22, 2020)................................................... 23

*Garner v. State Farm Mut. Auto. Ins. Co.*,
 No. CV 08 1365 CW, 2010 WL 1687829 (N.D. Cal. Apr. 22, 2010) ....................... 13

*Graciano v. Robinson Ford Sales, Inc.*,
 144 Cal. App. 4th 140 (2006) ..................................................................... 14

*Hanlon v. Chrysler Corp.*,
 150 F.3d 1011 (9th Cir. 1998) ........................................................... 5, 12, 19

*Hensley v. Eckerhart*,
 461 U.S. 424 (1983) ....................................................................................... 8

*Hopkins v. Stryker Sales Corp.*,
 No. 11-CV-02786-LHK, 2013 WL 496358 (N.D. Cal. Feb. 6, 2013)....................... 11

*In re Bluetooth Headset Prods. Liab. Litig.*,
 654 F.3d 935 (9th Cir. 2011) ............................................................... 6, 7, 19

*In re Chiron Sec. Litig.*,
 No. C-04-4293 VRW, 2007 WL 4249902 (N.D. Cal. Nov. 30, 2007)...................... 15

*In re Heritage Bond Litig.*,
 No. 02-ML-1475 DT, 2005 WL 1594403 (C.D. Cal. June 10, 2005) ....................... 11

*In re HPL Techs., Inc. Sec. Litig.*,
 366 F. Supp. 2d 912 (N.D. Cal. 2005) ..................................................... 15

*In re Online DVD-Rental Antitrust Litig.*,
 779 F.3d 934 (9th Cir. 2015) ..................................................................... 12

*In re Rite Aid Corp. Securities Litigation*,
 396 F.3d 294 (3d Cir. 2005) ..................................................................... 13

*In re Syncor ERISA Litig.*,
 516 F.3d 1095 (9th Cir. 2008) ..................................................................... 5

*In re the PMI Group, Inc. Securities Litig.*,
 No. 08-1405 SI (N.D. Cal. Dec. 16, 2010)......................................................... 19

*In re Washington Pub. Power Supply Sys. Sec. Litig.*,

    19 F.3d 1291 (9th Cir. 1994) ............................................................................ 11

*Kerr v. Screen Extras Guild, Inc.*,

    526 F.2d 67 (9th Cir. 1975) .............................................................................. 19

*Lazarin v. Pro Unlimited, Inc.*,

    No. C11-03609 HRL, 2013 WL 3541217 (N.D. Cal. July 11, 2013) ..................... 22

*Loretz v. Regal Stone, Ltd.*,

    756 F. Supp. 2d 1203 (N.D. Cal. 2010) ............................................................. 19

*Lusby v. GameStop Inc.*,

    No. C12-03783 HRL, 2015 WL 1501095 (N.D. Cal. Mar. 31, 2015) ...................... 11

*Mandel v. Lackner*,

    92 Cal. App. 3d 747 (1979) ............................................................................... 14

*Mangold v. Cal. Pub. Utils. Comm'n*,

    67 F.3d 1470 (9th Cir. 1995). ........................................................................... 14

*Martin v. AmeriPride Servs., Inc.*,

    No. 08CV440-MMA JMA, 2011 WL 2313604 (S.D. Cal. June 9, 2011) ................. 22

*Martino v. Ecolab*,

    No. 3:14-cv-04358-VC (N.D. Cal. Jan. 31, 2017) ................................................ 12

*Moore v. PetSmart, Inc.*,

    No. 5:12-CV-03577-EJD, 2015 WL 5439000 (N.D. Cal. Aug. 4, 2015) ................. 18

*Murphy v. Kenneth Cole Prods., Inc.*,

    40 Cal. 4th 1094 (2007) ..................................................................................... 9

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,

    221 F.R.D. 523 (C.D. Cal. 2004) ....................................................................... 12

*Nat'l Coal. of Associations of 7-Eleven Franchisees v. Southland Corp.*,

    210 F.3d 384 (9th Cir. 2000) ............................................................................... 6

*Nemecek & Cole v. Horn*,

    208 Cal. App. 4th 641 (2012) ........................................................................... 14

*O'Connor v. Uber Techs., Inc.,*

    No. 13-cv-03826-EMC, 2019 WL 4394401 (N.D. Cal. Sept. 13, 2019) ........................... 5, 6, 8

*Paul Johnson, Alston & Hunt v. Graulty,*

    886 F.2d 268 (9th Cir. 1989) ............................................................................................. 12

*Polee v. Cent. Contra Costa Transit Auth.,*

    No. 18-CV-05405-SI, 2021 WL 308608 (N.D. Cal. Jan. 29, 2021) ...................................... 15

*Prison Legal News v. Schwarzenegger,*

    608 F.3d 446 (9th Cir. 2010) ............................................................................................. 15

*Radcliffe v. Experian Info. Solutions Inc.,*

    715 F.3d 1157 (9th Cir. 2013) ........................................................................................... 21

*Roberts v. Marshalls of CA, LLC,*

    No. 13-cv-04731-MEJ, 2018 WL 510286 (N.D. Cal. Jan. 23, 2018) ................................... 17

*Rodriguez v. West Publishing Corp.,*

    563 F.3d 948 (9th Cir. 2009) ............................................................................................. 21

*Ross v. U.S. Bank Nat. Ass'n,*

    No. C07-02951SI, 2010 WL 3833922 (N.D. Cal. Sept. 29, 2010)

*Sanchez v. Martinez,*

    54 Cal. App. 5th 535 (2020) ................................................................................................ 9

*Singer v. Becton Dickinson & Co.,*

    No. 08-CV-821-IEG (BLM), 2010 WL 2196104 (S.D. Cal. June 1, 2010) ............................ 22

*Staton v. Boeing Co.,*

    327 F.3d 938 (9th Cir. 2003) ............................................................................................. 20

*Steiner v. Am. Broad. Co.,*

    248 Fed. Appx. 780 (9th Cir. 2007) ................................................................................... 19

*Syers Properties III, Inc. v. Rankin,*

    226 Cal. App. 4th 691 (2014) ............................................................................................ 14

*Tavaglione v. Billings,*

    4 Cal. 4th 1150 (1993) ........................................................................................................ 9

MOTION FOR FINAL APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT

*Taylor v. Fedex Freight, Inc.*,

      No. 5:10-cv-02118 LHK (N.D. Cal. Jan. 27, 2012) ................................................................. 22

*United Steelworkers v. Phelps Dodge Corp.*,

      896 F.2d 403 (9th Cir. 1990) ........................................................................................................ 15

*Vizcaino v. Microsoft Corp.*,

      290 F.3d 1043 (9th Cir. 2002) .................................................................................... 8, 14, 19

**STATUTES**

California Labor Code section 226.7 ............................................................................................. 9, 10

California Labor Code section 1194 ................................................................................................. 10

California Labor Code section 1194.2 .............................................................................................. 10

**RULES**

Federal Rule of Civil Procedure 23 ................................................................................................ 5, 6

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

The Court preliminarily approved the Labor Code Private Attorneys General Act and Class Action Settlement and Release Agreement[1] (hereinafter referred to as the "Settlement" or "PAGA/Class Agreement") entered into by Plaintiffs Robert Bankwitz and William Jacobo and Defendant Ecolab Inc. ("Ecolab"). The Court-appointed settlement administrator mailed the approved class notice to the Class Members, none of whom filed an objection or opted out of the Settlement. Given the widespread support of the Settlement, Plaintiffs now move the Court for final approval pursuant to Rule 23(e). Specifically, Plaintiffs respectfully request that the Court (1) grant final approval to the Settlement; (2) direct the parties to perform their obligations as set out in the Settlement; (3) dismiss the action with prejudice; and (4) retain jurisdiction to the extent necessary to implement the terms of the Settlement until each act to be performed by the Parties under the Settlement has been performed.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A. Settlement Agreement

The settlement class consists of:

> Plaintiffs Bankwitz and Jacobo and all other current and former Ecolab employees who worked as Territory Managers (TMs) and/or Hospitality Territory managers (HTMs) and/or Territory Sales Representatives (TSRs) in California at any time from May 22, 2013 through January 20, 2021 (the date of preliminary approval of the PAGA/Class Agreement), except those who: (i) filed an arbitration complaint asserting the same or similar claims as Bankwitz and Jacobo that is presently pending and has not been adjudicated to a final award, dismissed, or resolved by an offer of compromise; (ii) accepted an offer of settlement of their individual claims and released their wage and hour claims against Ecolab; (iii) are individually represented by Plaintiffs' Counsel for purposes of pursuing their individual wage and hour claims but have not filed an arbitration complaint; or (iv) were hired as a TSR on or after January 5, 2020, and did not hold a TM or HTM position between May 22, 2013 and January 4, 2020. "Class Members" excludes any individual who participated in the settlement of the case entitled *Martino v. Ecolab*, U.S. District Court for the Northern District of California, Case No. 5:14-cv-04358, and whose claims are completely barred by the *Martino* settlement.

---

[1] The Settlement may be found at Docket 132-1.

Dkt. 132-1 at ¶ 1.  There are 53 individuals in the settlement class ("Settlement Class" or "Class Members").  Strauss Decl. at ¶ 17.

The proposed Settlement also resolves Bankwitz's representative claim for civil penalties under PAGA, which will result in payment of PAGA penalties to be apportioned between the LWDA and the "PAGA Members."  Settlement at ¶ III.A.  "PAGA Members" means current and former Ecolab employees who worked as Territory Managers and/or Hospitality Territory Managers and/or Territory Sales Representatives in California from May 18, 2016, through January 20, 2021, i.e., the date of preliminary approval ("PAGA Period") and who are represented by Bankwitz as potential aggrieved employees in the PAGA claim in this action.  *Id*. at ¶ I.A.  There are 231 PAGA Members; all the Class Members are also PAGA Members.  *Id*.

In exchange for Class Members' and PAGA Members' release of their claims as set forth in the PAGA/Class Agreement, the Settlement provides monetary relief.  Defendant will pay a maximum, non-reversionary settlement amount of Two Million Five Hundred Fifty Thousand Dollars ($2,550,000.00) (the "PAGA/Class Settlement Amount"). Settlement at ¶ II.A.  From the PAGA/Class Settlement Amount, $200,000 will be allocated to the payment of PAGA penalties (75% of which will go to the LWDA/State of California and 25% will go to the PAGA Members), up to $735,000 will be allocated for attorneys' fees, up to $21,000 will be allocated for litigation costs and expenses, up to $50,000 will be allocated for Service Enhancements to Plaintiffs Bankwitz and Jacobo (up to $25,000 each), and $8,500 will be allocated for Settlement Administrator costs.  *Id.* at ¶¶ III.A, IX.C, IX.D; Dkt. 150 at ¶ 32.  After allocation of $200,000.00 to PAGA penalties payable to the LWDA and PAGA Members (the "PAGA Penalties Portion") (Settlement § III.A), awards of attorneys' fees and costs, service awards to the Plaintiffs for serving as Settlement Class representatives, and settlement administration costs, the remaining amount of the PAGA/Class Settlement Amount (no less than $1,406,500) will be disbursed to the 53 Class Members (such remaining amount is the "Non-Claimant Settlement Class Portion." Settlement at ¶ II.B.

Each Class Member shall be allocated a share of the Non-Claimant Settlement Class Portion based upon the number of qualifying workweeks he/she worked during the relevant time period and his/her eligibility to recover a potential California Labor Code section 203 penalty based on former

employee status (the "203 Factor"). Settlement at ¶ III.D.1.  In addition, there is a settlement payment minimum of $500.00, so that under all circumstances each and every Class Member shall receive at least $500.00.  *Id.*  Accordingly, each payment to an individual Class Member shall be determined by allocating that individual's pro rata share of "Qualifying Workweeks," then by allocating a single $2,500.00 203 Factor payment to each eligible terminated/resigned individual, all subject to a $500.00 payment floor. *Id.*  "Qualifying Workweeks" means the individual Class Member's active workweeks during the Class Period, less any workweeks released as a class member in the *Martino* settlement, less any workweeks that occurred during any period covered by a final arbitration award (if the Class Member adjudicated claims in a prior arbitration), and less any workweeks covered by a California Code of Civil Procedure section 998 offer to compromise (if the Class Member accepted a section 998 offer to compromise to resolve an individual arbitration complaint), divided by the total Qualifying Workweeks as determined by Ecolab's payroll data for the entire Settlement Class.  *Id.*

Each PAGA Member, including Class Members who are also PAGA Members, shall receive a pro rata amount of the PAGA Member Portion (i.e., $50,000) based on their pro rata share of active workweeks (i.e., the individual PAGA Member's active workweeks during the PAGA Period divided by the total active workweeks based on Ecolab payroll data).  *Id.* at III.D.2.

The average recovery for Class Members is approximately $30,812, exclusive of the $50,000 that is to be divided amongst all the PAGA Members.  Declaration of Michael Strauss in Support of Motions for Final Approval of Class Action and Private Attorneys General Act Settlement, for Attorneys' Fees and Costs, and for Class Representative Service Enhancements (Strauss Decl.) at ¶ 22. The Claims Administrator shall mail to Class Members and PAGA Members their individual settlement payments within 30 days after the Settlement becomes final.  Settlement at ¶ X.C.  Checks not cashed within 180 days after issuance will be disbursed to the California State Controller's Unclaimed Property Fund.  *Id.* at ¶ X.C.3.

**B.  Updates Since Preliminary Approval**

The Court held a hearing on Plaintiff's motion for preliminary approval on January 7, 2021, after which the Court issued a minute order granting the motion but ordering the parties to submit for the Court's approval a revised class notice making clear, *inter alia*, that the Settlement is part of a broader

global settlement.  Dkt. 143.  The parties thereafter submitted a revised class notice to the Court.  Dkt. 147.  The Court requested modification of the class notice; the parties made that modification; and the Court approved the revised class notice (the "Class Notice") and granted Plaintiffs' motion for preliminary approval.  Dkts. 148-150.

Pursuant to the Court's order granting preliminary approval, the Claims Administrator, Simpluris, sent the approved Class Notice to all 53 Class Members.[2]  Settlement at ¶ V.A.  Declaration of Jeremiah Kincannon at ¶ 8.  Only one mailing was returned as undeliverable.  *Id.* at ¶¶ 10-11.  Class Counsel have made efforts to contact that single individual, with the cooperation of Ecolab and its counsel.  Strauss Decl. at ¶ 24.  Their efforts continue, though the individual in question has not yet been located.  *Id.*  In the end, the total deliverability of class notices to Class Members was over 98 percent (i.e., to 52 out of 53 Class Members).  Kincannon Decl. at ¶¶ 8-10.

Per the Settlement, Class Members were not required to submit a claim form to participate in the Settlement.  Settlement at ¶¶ VI.B (Class Members who do not timely opt out of the Settlement are bound by its terms), VII.C (objectors may still participate in the Settlement).  The deadline to opt out of or object to the Settlement was April 19, 2021.  No one has filed an objection to the Settlement. Kincannon Decl. at ¶ 13.  No one has opted out of the Settlement.  *Id.* at ¶ 12.

On December 11, 2020, the Claims Administrator provided a CAFA Notice to the United States Attorney General, the Attorney General of the State of California, and the Attorneys General of all states in which Non-Claimant Settlement Class Members reside based on the last known mailing address in Ecolab's HR system of record.  *Id*. at ¶ 16.  No state Attorney General has objected to the terms of the Settlement. *Id.*; Strauss Decl. at ¶ 20.

## III.    MOTION FOR FINAL APPROVAL

### A.  Class Certification

When presented with a motion for final approval of a class action settlement, a court first evaluates whether certification of the Settlement Class is appropriate under Federal Rule of Civil

---

[2] Due to a mailing error, the Claims Administrator initially inadvertently mailed the Class Notice to all 231 PAGA Members in addition to mailing it to the 53 Class Members as required by the Settlement. This was corrected by a mailing of a notice mutually agreed to by the Parties and sent to the PAGA Members who mistakenly received the Class Notice. Kincannon Decl. at ¶ 9.

Procedure 23(a) and (b). Rule 23(a) provides that a class action can be maintained if four requirements are met: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. *See* Fed. R. Civ. 23(a)(1)-(4). As relevant here, settlement certification of a Rule 23(b)(3) class requires that (1) "the questions of law or fact common to class members predominate over any questions affecting only individual members" and (2) "a class action [be] superior to any other available methods for fairly and efficiently adjudicating the controversy." *See* Fed. R. Civ. P. 23(b)(3).

The Court analyzed these factors in its Preliminary Approval Order and there is no reason to disturb its earlier conclusions. The requirements of Rule 23(a) and (b)(3) were satisfied then. *See* Dkt. 150 at 1-3. There have been no changes to the class impacting the numerosity, commonality, typicality, and adequacy of representation factors. Strauss Decl. at ¶¶ 51-53. Nor have any questions of law or fact common to the Settlement Class been subsumed by questions affecting only individual class members. *Id.* Indeed, the notice procedure authorized by the Court has resulted in an overwhelmingly positive reaction by the Class Members, since none opted out or objected to the Settlement. *Id.* There is no reason for the Court, therefore, to depart from its previous conclusion that the Settlement Class meets the certification requirements of Rule 23. *See O'Connor v. Uber Techs., Inc.*, No. 13-cv-03826-EMC, 2019 WL 4394401, at *4 (N.D. Cal. Sept. 13, 2019). Accordingly, Plaintiffs now request that the Court confirm its previous certification of the Settlement Class.

## B. Final Approval

A class action may only be settled with court approval. Fed. R. Civ. P. 23(e). Where, as here, the proposed settlement will bind the Class Members (by, e.g., releasing their claims), the court must find that the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). This standard balances the public policy favoring settlement of complex class action litigation, *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008), with the due process interests of absent class members, *Allen v. Bedolla*, 787 F.3d 1218, 1223 (9th Cir. 2015) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)).

In making the fairness assessment, courts typically consider: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent

of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement. *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 943 (9th Cir. 2011) (citation omitted). Furthermore, Rule 23(e)(2) of the Federal Rules of Civil Procedure now lists the factors to be considered in settlement approval, if the proposal will bind class members. Fed. R. Civ. P 23(e)(2). Those factors are "whether: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other." *Id.*

The Court assessed all of these factors in its Order granting preliminary approval and found that they counseled in favor of approval. *See* Dkt. 143, 150 at 3. There are no government participants in this case, as the California Labor and Workforce Development Agency ("LWDA"), after receiving notice of the Settlement, has not objected or otherwise appeared in the action. Strauss Decl. at ¶ 20.  (In the sense that the LWDA is a participant because it will receive $150,000, this fact weighs in favor of approval, since the State's coffers will increase by that amount.)  No governmental entity has formally responded to receipt of the CAFA Notice.  *Id.*  Thus, only the reaction of the class and the terms of the award of attorneys' fees remain pertinent for final approval.  *See O'Connor*, 2019 WL 4394401, at *5.

### C.  Proposed Award of Attorneys' Fees and Response of the Class

As of the date of the filing of this motion, zero objections to the final settlement have been filed with the Court.  A low opt-out rate suggests the support of Class Members and counsels in favor of approval.  *See Nat'l Coal. of Ass'ns of 7-Eleven Franchisees v. Southland Corp.*, 210 F.3d 384 (9th Cir. 2000) (finding that a .6% opt-out rate suggests "that the settlement was a favorable one").  Here, where no one opted out or objected, the reaction of the Class Members even more strongly favors approval of the Settlement.

Plaintiffs address the reasonableness of their request for fees and costs in the following section. Nevertheless, as the Class has not objected to the Settlement after receiving notice of the amount of fees and costs to be sought by Class Counsel, the reaction of the Class Members supports the requested amounts.

**D. Conclusion**

In sum, the final approval factors establish that the Settlement is fair, reasonable, and adequate. The Settlement is in the best interests of the named Plaintiffs and members of the Class and is consistent and in compliance with all requirements of due process and federal law.  The Settlement is the result of arm's-length negotiations between experienced counsel representing the interests of the named Plaintiffs, members of the Class, and the Defendant, and is not the product of collusion, fraud, or tortious conduct. The parties have ensured full compliance with the Court's Preliminary Approval Order and other Orders relating to this Settlement. The class reaction has been overwhelmingly favorable.  For these reasons, Plaintiffs urge the Court to grant the Motion for Final Approval. Ecolab does not oppose this request.

## IV.    MOTION FOR ATTORNEYS' FEES

Pursuant to the Settlement, Class Counsel may seek up to $735,000 (approximately 30 percent of the PAGA/Class Settlement Amount) as their reasonable attorneys' fees and a reasonable amount for reimbursement of actual costs and expenses, not to exceed $150,000.  Settlement at ¶ IX.C.  Class Counsel seek an award of fees and costs below these amounts.

Class Counsel hereby moves for an award of fees of $637,500, which is 25 percent of the PAGA/Class Settlement Amount, and reimbursement of litigation expenses of $20,917.07.

### A. Legal Standard

"Where a settlement produces a common fund for the benefit of the entire class, courts have discretion to employ either the lodestar method or the percentage-of-recovery method" in awarding attorneys' fees.  *In re Bluetooth*, 654 F.3d at 942 (citation omitted). "Because the benefit to the class is easily quantified in common-fund settlements," courts may "award attorneys a percentage of the common fund in lieu of the often more time-consuming task of calculating the lodestar." *Id*. "Applying this calculation method, courts typically calculate 25% of the fund as the 'benchmark' for a reasonable

1    fee award." *Id*. Furthermore, courts have approved attorneys' fees where the fees were "fair and

2    reasonable in light of the results achieved, the risks of litigation, the skill required and the quality of

3    work, the contingent nature of the fee [and] the burdens carried by class counsel, and the awards made

4    in similar cases." *Dennis v. Kellogg Co*., 697 F.3d 858, 864 (9th Cir. 2012) (citing *Vizcaino v. Microsoft*

5    *Corp.*, 290 F.3d 1043, 1048-50 (9th Cir. 2002)).

6    **B.  The results obtained for the Settlement Class are excellent.**

7    Of these factors, the first – the results obtained for the class – is the "most critical." *Hensley v.*

8    *Eckerhart*, 461 U.S. 424, 436 (1983). Here, Plaintiffs' counsel succeeded in securing favorable results

9    for the Class. Fifty-three Class Members are eligible for relief, and every one of those 53 individuals is

10   participating in the Settlement. The average payout for the 53 Class Members will be approximately

11   $30,812. Strauss Decl. at ¶ 22. A result of almost $31,000 per Class Member would be a bigger recovery

12   than three of the four arbitrations involving TMs – *Bankwitz*, *Jacobo*, and *Craig*. Jt. Resp. to Ct. Req.

13   for Suppl. Briefing ("Jt. Resp."), Dkt. 137 at 39:12-23. Given that the Class Members did not have to

14   pursue an individual arbitration of their own, the results here are excellent and meaningful. *O'Connor*,

15   2019 WL 4394401, at *7 (describing average recovery of $2,206 and improved working conditions as

16   "meaningful results").

17   **C.  The degree of risk in this litigation was high.**

18   The second factor, the risk of litigation, also supports granting the requested fee. The typical

19   risks of complex, class action litigation were present in this case: class certification, arbitration

20   provisions, a decision on the merits, and potential appeals are all issues that can result in no recovery

21   whatsoever to class members or class counsel. Plaintiffs faced unique risks as well. For example,

22   Plaintiffs asserted a minimum wage claim on the theory that Ecolab's compensation scheme, whereby

23   the TMs received a recoverable draw one pay period, followed by salary and commission wages the

24   next, failed to compensate the TMs at the minimum wage in pay periods when they received only their

25   draw. The law on this legal theory is not clear cut, with both sides able to point to support for their

26   respective positions. Joint Resp. at 17-19. Indeed, the two arbitrators to rule on this issue reached

27   different results, with one finding liability and the other finding none. Dkt. 103 at 54 (*Craig* Award),

28

75 (*Brewer* Award).  When the law is unclear and the potential damages are great, Plaintiffs faced the daunting prospect of having to pursue or defend an appeal on this somewhat novel legal theory.

Another unique risk ultimately came to pass.  After the four arbitrations that the claimants litigated to conclusion and during settlement negotiations in this case, the California Court of Appeal in *Sanchez v. Martinez*, 54 Cal. App. 5th 535 (2020) issued a decision that eviscerated Plaintiffs' rest period claims.  In *Sanchez*, farm laborers who were paid on a piece-rate basis sought damages for rest period premiums and minimum wages for the same underlying conduct by their employer. First, the workers sought unpaid minimum wages for the duration of their rest periods, which had not been paid. *Id.* at 541-542. Second, they sought a rest period premium – an "additional hour of pay" – under Labor Code section 226.7 for the failure to provide the paid rest period. *Id.* at 542. The trial court declined to award damages for both minimum wages and rest periods. On appeal, the workers contended that the court instead should have compensated them under both theories. *Id.*

The Court of Appeal disagreed. Although the court recognized that the workers had viable claims for unpaid minimum wages under both a minimum wage and rest period theory, it concluded that the workers could not recover damages for both violations. *Id.* at 546.  The court began its analysis by recognizing that California law prohibits double recoveries. "Regardless of the nature or number of legal theories advanced by [a] plaintiff, [the plaintiff] is not entitled to more than a single recovery for each distinct item of compensable damage supported by the evidence." *Tavaglione v. Billings*, 4 Cal. 4th 1150, 1158 (1993). "Double or duplicative recovery for the same items of damage amounts to overcompensation and is therefore prohibited." *Id*. at 1159. The court found that the attempt to seek damages for minimum wages and rest period premiums was an impermissible double recovery because "[b]oth plaintiffs' theories of recovery seek compensation for the very same harm – namely, [the employer]'s failure to pay for authorized rest periods." *Sanchez*, 54 Cal. App. 5th at 546.

The *Sanchez* court supported its conclusion by recognizing that the purpose of the rest period premiums set forth in Labor Code section 226.7 is to "compensate employees, not [to impose] a penalty." *Id.* (quoting *Murphy v. Kenneth Cole Prods., Inc.*, 40 Cal. 4th 1094, 1114 (2007)). Because the minimum wage laws were designed to provide compensation for minimum wage violations, the

*Sanchez* court reasoned that the award of rest period premiums on top of minimum wages owed would turn section 226.7 into a penalty statute. *Id.*

Applying *Sanchez* here would have the same result. The conduct about which Plaintiffs complain is Ecolab's alleged failure to adequately pay for rest periods taken during the half of the month for which they received a draw payment. But Plaintiffs also assert that during this same timeframe, the draw payment resulted in a minimum wage violation. In other words, Plaintiffs' minimum wage claim asserts unpaid minimum wages for all work time during the entire pay period covered by the draw, which includes rest period time. If Plaintiffs prevailed on their minimum wage claim, they would be awarded minimum wages for all of the alleged work time (e.g., an entire 8-hour day), including paid rest periods. Under *Sanchez*, Plaintiffs could not seek both minimum wages and rest period premiums for the same violation, i.e., the failure to pay for all hours worked.

Also, under *Sanchez*, Plaintiffs and the Class Members would have to pick the alternative remedies of minimum wages (plus liquidated damages) or rest period premiums. The value of the Settlement Class's minimum wage claims, Lab. Code § 1194, plus liquidated damages, Lab. Code § 1194.2, is estimated by Plaintiffs to be approximately $1.7 million, while the value of the rest period claim, Lab. Code § 226.7, is estimated to be $106,425. Thus, the more valuable of the two alternative remedies is the minimum wage claim. As a result, Plaintiffs cannot stack rest period premiums on top of minimum wage damages in determining exposure for settlement purposes.

Taken together, these examples illustrate that the risk of litigation was significant in this case.

**D. Class Counsel are highly experienced and skilled.**

The third factor, the skill required and the quality of work, also favor granting the requested fee award. Class Counsel have a long history of success on behalf of California workers in wage-and-hour matters. *See* Strauss Decl. at ¶¶ 26-29; Declaration of Alejandro P. Gutierrez in Support of Motions for Final Approval of Class Action and Private Attorneys General Act Settlement, for Attorneys' Fees and Costs, and for Class Representative Service Enhancements (Gutierrez Decl.) at ¶¶ 3-5; Declaration of Daniel J. Palay in Support of Motions for Final Approval of Class Action and Private Attorneys General Act Settlement, for Attorneys' Fees and Costs, and for Class Representative Service Enhancements (Palay Decl.) at ¶¶ 4-5. The skills of wage-and-hour attorneys are those of specialists. *Barbosa v.*

*Cargill Meat Solutions Corp.,* 297 F.R.D. 431, 449 (E.D. Cal. Jul. 2, 2013) (approving fee in amount of 33 percent of class recovery in part because case "required specialist skills to litigate the legal theories relating to wage-and-hour law and labor law at issue in the case"); *Franco v. Ruiz Food Prods., Inc.*, No. 1:10-cv-02354-SKO, 2012 WL 5941801 at \*16 (E.D. Cal. Nov. 27, 2012) ("specialist skills" are required "to litigate the legal theories relating to wage and hour law and labor law"); *Lusby v. GameStop Inc.*, No. C12-03783 HRL, 2015 WL 1501095, at \*4 (N.D. Cal. Mar. 31, 2015) (awarding 33.33% of settlement fund where class counsel devoted itself primarily to prosecuting employment law matters and almost exclusively to class actions). They have additionally litigated against Ecolab for many years. Strauss Decl. at ¶ 28; Gutierrez Decl. at ¶ 4. Recently, they litigated dozens of TM cases in arbitration, obtaining solid results that directly benefited the Settlement Class. Strauss Decl. at ¶ 54. Absent Class Counsel's exceptional efforts in this case, 53 Ecolab employees would not be entitled to receive, and Ecolab would not be obligated to pay, on average approximately \$31,000 per employee, with the highest payment estimated at \$107,756. *Id.* at ¶ 55. In sum, prosecuting this case required a commitment of time, resources, and energy from Class Counsel, and the relief achieved simply would not have been possible but for the commitment and skill of Class Counsel.

**E.  Counsel spent four years litigating this case on a contingent basis.**

The fourth factor, the contingent nature of the fee and the burdens carried by class counsel, also points in favor of approval. Courts have long recognized the public policy of rewarding attorneys for accepting representation on a contingent fee basis. *See In re Washington Pub. Power Supply Sys. Sec. Litig.,* 19 F.3d 1291, 1299 (9th Cir. 1994). This is especially true where, as here, Class Counsel have significant experience in a particular type of litigation – wage-and-hour class actions – at issue. Moreover, when counsel takes cases on a contingency fee basis, the risk of non-payment after years of litigation justifies a significant fee award. *See In re Heritage Bond Litig.*, No. 02-ML-1475 DT, 2005 WL 1594403, at \*19 (C.D. Cal. June 10, 2005) (awarding attorneys' fees in the amount of 33 percent of the common fund based in part on the effort, skill and experience of class counsel, and collecting cases regarding the same); *Hopkins v. Stryker Sales Corp.*, No. 11-CV-02786-LHK, 2013 WL 496358, at \*3 (N.D. Cal. Feb. 6, 2013) (in awarding fees of 30% of the settlement, the court explained that "[c]lass [c]ounsel took a significant risk investing in this case" because it "was conducted on an entirely

contingent fee basis against a well-represented [d]efendant" and because [a]ll of the financial risk of litigation was therefore assumed by [c]lass counsel, whose fee arrangement with [p]laintiffs required [c]lass [c]ounsel to bear all the costs of litigation"); *Franco*, 2012 WL 5941801, at *16 (same).

Class Counsel took this case on a fully contingent arrangement, with no payment up front, and have borne the expenses, costs, and risks associated with litigating this case. Straus Decl. at ¶ 56. In addition, counsel have litigated this case for about four years and have achieved significant benefits for Class Members. *Id*. at ¶ 57.  Virtually all work handled by Plaintiffs' counsel's firms is conducted on a contingent-fee basis, which means that sometimes fees and expenses are recovered; other times, nothing is recovered. *Id*. at ¶ 56; Palay Decl. at ¶ 12; Gutierrez Decl. at ¶ 13. Such an approach permits clients to obtain attorneys without having to pay hourly fees, which in turn provides critical access to the courts for people who otherwise would be unable to find competent counsel to represent them.  Gutierrez Decl. at ¶ 14.

**F.  The requested percentage of the fund of 25 percent is in line with the market rate.**

The fifth factor – the awards made in similar cases – supports approving a fee request of 25 percent of the gross settlement fund. As a general matter, in common fund class settlements "fees awards range from 20 percent to 30 percent of the fund created." *Paul Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989). Generally, "[u]nder the percentage-of-recovery method, the attorneys' fees equal some percentage of the common settlement fund; in [the Ninth Circuit], the benchmark percentage is 25%." *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 949 (9th Cir. 2015). This Court in the predecessor case to this one, *Martino v. Ecolab*, No. 3:14-cv-04358-VC (N.D. Cal. Jan. 31, 2017), awarded fees of 25 percent of the common fund of $21,000,000.  Thus, the requested award here is in line with attorneys' fees awarded in other similar cases.

**G.  The reaction of the Settlement Class supports the requested fee award.**

"It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528-29 (C.D. Cal. 2004); *Hanlon,* 150 F.3d at 1027 ("[T]he fact that the overwhelming majority of the class willingly approved the offer and stayed in the class presents at least some positive commentary as to its fairness");

*Garner v. State Farm Mut. Auto. Ins. Co.*, No. CV 08 1365 CW, 2010 WL 1687829, at *2 (N.D. Cal. Apr. 22, 2010) (noting "single objection out of a sizeable class, after notice, further demonstrates the reasonableness and fairness of [c]lass [c]ounsels' request"). Here, not a single Class Member objected to the Settlement, which supports the requested fee award.

### H. A lodestar cross-check confirms the reasonableness of the requested fee award.

Finally, while Class Counsel are not seeking an award of fees based upon the lodestar/multiplier approach, cross-checking the fees under this doctrine confirms the reasonableness of the fee. *Craft v. Co. of San Bernardino*, 624 F. Supp. 2d 1113, 1122 (C.D. Cal. 2008) (though not required, a court may consider the lodestar in evaluating a percentage award request). Under the lodestar method, a reasonable hourly rate "is the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation." *Camacho v. Bridgeport Fin., Inc.* 523 F.3d 973, 979 (9th Cir. 2008). The lodestar cross-check requires "neither mathematical precision nor bean-counting." *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 306 (3d Cir. 2005). As explained in more detail below, Class Counsel's lodestar, unadjusted by a multiplier, is $304,262.50. Strauss Decl. ¶ 49. This is a baseline lodestar cross-check figure, as it is based on the time Class Counsel have recorded in the litigation as of May 13, 2021. The lodestar calculations are as follows:

| Name | Admission Date | Position | Rate | Hours | Fees |
|---|---|---|---|---|---|
| **Alejandro P. Gutierrez** | 1983 | Attorney | $850 | 36.05 | $30,642.50 |
| **Daniel J. Palay** | 1997 | Attorney | $800 | 68.7 | $54,960.00 |
| **Michael A. Strauss** | 2006 | Attorney | $650 | 158.30 | $102,895.00 |
| **Brian D. Hefelfinger** | 2007 | Attorney | $625 | 108.60 | $67,875.00 |
| **Andrew Ellison** | 2012 | Attorney | $400 | 79.60 | $31,840.00 |
| **Coleen DeLeon** | N/A | Paralegal | $250 | 64.2 | $16,050.00 |
| **Total** | | | | 515.45 | $304,262.50 |

Additional attorney hours and costs will be necessary over the next few months to ensure the proper administration and implementation of the Settlement. *Id.*

### a. Class Counsel's hours are reasonable.

From this case's inception in May 2017 to the present, Class Counsel recorded 515.45 hours in litigating this matter. Strauss Decl. at Ex. C. Class Counsel have supplied the Court with a summary of hours, broken down by biller and task. *Id.*

13

Class Counsel exercised sound billing discretion by reducing the billable hours incurred, including writing off time billed by associate attorneys.  Strauss Decl. at ¶ 44; Gutierrez Decl. at ¶ 8; Palay Decl. at ¶ 7. Class Counsel also delegated many tasks to lower-billing paralegals and associate attorneys.  Strauss Decl. at ¶ 17; Gutierrez Decl. at ¶ 10.

Because this was a contingency fee case, Class Counsel had little incentive to spend unnecessary time on tasks to inflate their fees.  The hours Class Counsel spent litigating the case were limited to that necessary to pursue Plaintiffs' claims and to procure and effectuate a class settlement.  Class Counsel worked closely and in cooperation with one another to divide tasks, ensure efficient case management, and prevent duplication of efforts.  Strauss Decl. at ¶ 46; Gutierrez Decl. at ¶ 6; Palay Decl. at ¶ 8. Accordingly, the hours expended were reasonably and necessarily incurred.

### b.  Class Counsel's rates are reasonable.

The hourly rates set forth below are reasonable and should be approved.  Under the lodestar method, a reasonable hourly rate "is the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation."  *Camacho*, 523 F.3d at 979.  Ordinarily, reasonable hourly rates are based on each attorney's current hourly rates.  *Vizcaino*, 290 F. 3d at 1051. The relevant community is the location where the district court sits, in this case the Northern District of California.  *Camacho,* 523 F.3d at 979.  Where California law governs the claim, it also governs the award of attorneys' fees. *Mangold v. Cal. Pub. Utils. Comm'n*, 67 F.3d 1470, 1478 (9th Cir. 1995).

Among the ways to demonstrate market rates are (1) counsel's own billing rates, which carry a presumption of reasonableness, *Mandel v. Lackner*, 92 Cal. App. 3d 747, 761 (1979), disapproved of on other grounds by *Serrano v. Unruh*, 32 Cal. 3d 621 (1982); (2) declarations from local attorneys, *Graciano v. Robinson Ford Sales, Inc.*, 144 Cal. App. 4th 140, 155 (2006); (3) reference to a general schedule and pay table for attorneys put out by the Department of Justice, called the *Laffey* Matrix, *Nemecek & Cole v. Horn*, 208 Cal. App. 4th 641, 650-51 (2012); *Syers Properties III, Inc. v. Rankin*, 226 Cal. App. 4th 691, 702 (2014)[3]; (4) previous fee awards, *United Steelworkers v. Phelps Dodge*

---

[3] In assessing reasonableness, courts often refer to the *Laffey* Matrix, "[a] widely recognized compilation of attorney. . . rate data" for the District of Columbia, "so named because of the case that generated the index." *In re Chiron Sec. Litig.*, No. C-04-4293 VRW, 2007 WL 4249902, at *6 (N.D. Cal. Nov. 30,

1    *Corp.*, 896 F.2d 403, 407 (9th Cir. 1990); and (5) rates awarded to attorneys of comparable experience

2    in other, similar cases in the same market, *Children's Hosp. & Med. Ctr. v. Bonta*, 97 Cal. App. 4th 740,

3    783 (2002).

4              Alejandro P. Gutierrez, admitted to practice in 1983, is a partner of his firm.  Gutierrez Decl. at

5    ¶ 2.  He has a long history of successfully litigating employment cases in California.  *Id.* at ¶¶ 3-5.  Mr.

6    Gutierrez seeks fees at an hourly rate of $850.  This rate is reasonable for several reasons.  First, $850

7    per hour is Mr. Gutierrez's hourly billing rate for employment matters in the Bay Area. Gutierrez Decl.

8    at ¶ 9.  Second, employment litigator James Finberg, who has one fewer year of practice than Mr.

9    Gutierrez, was billing at a rate of $1,050 in this same market as of April 2020.  *Id.* at Ex. A (Declaration

10   of James M. Finberg in Support of Motion for Attorney's Fees and Costs [Finberg Decl.]) ¶ 13.  Third,

11   the *Laffey* Matrix suggests that an attorney with 20-plus years of experience should be billing at the rate

12   of at least $914.  Strauss Decl. at ¶ 39 and Ex. A.  Fourth, previous fee awards, including in this Court,

13   support Mr. Gutierrez's rate.  In 2014, this Court approved Mr. Gutierrez's rate of $700 per hour in

14   another wage-and-hour case, finding the rate to be "reasonable" in the San Francisco Bay Area.  *Aguilar*

15   *v. Zep Inc.*, No. 13-CV-00563-WHO, 2014 WL 4063144, at *4 (N.D. Cal. Aug. 15, 2014).  Seven years

16   have passed, and Mr. Gutierrez's rate has increased over time to $850 per hour.  This $850-per-hour rate

17   was approved last year in the *Craig v. Ecolab, Inc.* arbitration, which was venued in San Francisco.

18   Strauss Decl. at ¶ 42; Dkt. 103 at 60.  Fifth, attorneys of comparable experience in similar cases in this

19   market have been awarded similar rates to Mr. Gutierrez's requested rate of $850 per hour.  *See Polee*

20   *v. Cent. Contra Costa Transit Auth.*, No. 18-CV-05405-SI, 2021 WL 308608, at *4 (N.D. Cal. Jan. 29,

21   2021) (approving rate of $850 per hour in employment case for attorney with 33 years of practice).

22   _____

23   2007).  The *Laffey* Matrix for the period 6/1/20 to 5/31/21 suggests that the average rate for attorneys
     with 20+ years of experience is $914.00.  This rate, however, is tailored for the District of Columbia.

24   The rate for Bay Area attorneys should be higher. *In re HPL Techs., Inc. Sec. Litig.*, 366 F. Supp. 2d
     912, 922 (N.D. Cal. 2005) ("adjusting the *Laffey* matrix figures upward by approximately 9% will yield

25   rates appropriate for the Bay area.")  Although the Ninth Circuit has cast some doubt as to the usefulness
     of the *Laffey* Matrix, *Prison Legal News v. Schwarzenegger*, 608 F.3d 446, 454 (9th Cir. 2010), courts

26   in this District continue to use it in evaluating attorney fee rates, including without limitation for the
     purpose of a lodestar cross-check.  *Brinker v. Normandin's*, No.  14 CV 03007 EJD HRL, 2017 WL

27   713554, at *2 (N.D. Cal. Feb. 23, 2017); *Caudle v. Sprint/United Mgmt. Co.*, No. C 17-06874 WHA,
     2019 WL 6841239, at *5 (N.D. Cal. Dec. 16, 2019).  California state courts similarly find that the *Laffey*

28   Matrix may be used to determine the reasonableness of local fee rates.  *Syers*, 226 Cal. App. 4th at 702.

                                         15

Daniel J. Palay is a shareholder of his firm. Palay Decl. at ¶ 1. Admitted to practice in California in 1992, Mr. Palay also has a long history of outstanding performance in employment cases. *Id.* at ¶¶ 3-5. Mr. Palay seeks fees at the rate of $800 per hour. This rate is reasonable for the same reasons stated above as for Mr. Gutierrez. First, $800 per hour is Mr. Palay's billing rate in the local market. *Id.* at ¶ 9. Second, Mr. Finberg declares that Mr. Palay's rate of $800 is reasonable in the Bay Area given his skill, expertise, and reputation. Finberg Decl. at ¶ 17. Third, per the *Laffey* Matrix, Mr. Palay could command a rate of at least $914 per hour. Strauss Decl. at ¶ 39 and Ex. A. Fourth, this court approved Mr. Palay's rate of $650 seven years ago. *Aguilar*, 2014 WL 4063144, at *4. The arbitrator in *Craig* recognized that Mr. Palay's rate has increased to $800 over time, approving his requested rate of $800. Strauss Decl. at 42; Dkt. 103 at 60. Fifth, comparable attorneys have been awarded similar rates in employment matters. *See, e.g., Bohannon v. Facebook, Inc.*, No. 12-CV-01894-BLF, 2016 WL 3092090, at *6 (N.D. Cal. June 2, 2016) (" '[I]n the Bay Area, reasonable hourly rates for partners range from $560 to $800, for associates from $285 to $510, and for paralegals and litigation support staff from $150 to $240.' ") (citation omitted); *Davis v. Prison Health Servs.*, No. 09-cv-2629 SI, 2012 WL 4462520, at *9 (N.D. Cal. Sept. 25, 2012) (awarding fees of $750 and $675 to attorneys with "considerable experience litigating civil rights and employment cases" and finding that the "rates [we]re in line with the overall market rate for experienced civil rights attorneys of similar abilities and experience in the Northern District"); *Campbell v. Nat'l Passenger R.R. Corp.*, 718 F. Supp. 2d 1093 (N.D. Cal. 2010) (finding reasonable $700 hourly rate for lead counsel in employment discrimination case, and support for "a market rate from $380 to $775 per hour for experienced employment and civil rights attorneys in the Northern District" for the years 2006-2009).

Michael Strauss is a shareholder of his firm. Strauss Decl. at ¶ 2. He has nearly 15 years of experience. *Id.* at ¶ 29. He is recognized for his skill and experience in plaintiffs'-side employment litigation, which makes up his primary area of practice. *Id.* at ¶¶ 28-33. He is also a leader in his legal community. *Id.* at ¶ 32. He seeks approval of his fees at the rate of $650 per hour. This rate is reasonable for the following reasons. First, $650 per hour is Mr. Strauss's billing rate for matters venued in San Francisco. *Id.* at ¶ 40. Second, local attorney Matthew Helland, an accomplished wage-and-hour attorney with comparable experience to Mr. Strauss, billed at the rate of $625 per hour in 2020, and rates

do increase over time.  Strauss Decl. at Ex. B (Declaration of Matthew Helland [Helland Decl.]) at ¶¶ 3, 4. Third, according to the *Laffey* Matrix, Mr. Strauss's rate should be $759.  Strauss Decl. at ¶ 39 and Ex. A.  Fourth, the arbitrator in *Craig* found Mr. Strauss's rate of $650 per hour to be reasonable for the Bay Area legal market.  Strauss Decl. at ¶ 42; Dkt. 103 at 60.  Fifth, attorneys with comparable experience have been awarded their fees by Bay Area courts at rates comparable to the $650 per hour requested here by Mr. Strauss.  Helland Decl. at ¶ 5 (rate of $625 per hour approved in wage-and-hour case venued in the Northern District of California for attorney admitted to practice in California in 2007); *Caudle*, 2019 WL 6841239, at *5 (approving rate of $650 for attorney admitted to practice in 2006); *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 251, 262 (N.D. Cal. 2015) (awarding hourly rate of $650 to a partner with 16 years of experience in 2015, $425 an hour to an attorney with 6 years of experience, and $375 an hour to an attorney with 4 years of experience); *Roberts v. Marshalls of CA, LLC*, No. 13-cv-04731-MEJ, 2018 WL 510286, at *14-15 (N.D. Cal. Jan. 23, 2018) (approving rates between $300 and $750 per hour).

Brian D. Hefelfinger is a named partner of his firm.  Declaration of Brian D. Hefelfinger in Support of Motions for Final Approval of Class Action and Private Attorneys General Act Settlement, for Attorneys' Fees and Costs, and for Class Representative Service Enhancements (Hefelfinger Decl.) at ¶ 2.  Mr. Hefelfinger has been licensed to practice in California since 2007, during which time he has litigated many employment cases.  *Id.* at ¶ 4.  Mr. Hefelfinger seeks his fees at the rate of $625 per hour.  This requested rate is reasonable for employment litigators in the San Francisco legal community for a number of reasons.  First, $625 is Mr. Hefelfinger's current billing rate for employment matters in the Bay Area.  Hefelfinger Decl. at ¶ 10.  Second, local attorney Helland, who has comparable years of experience in the same type of cases, billed at this same rate in 2020, and rates increase over time.  Helland Decl. at ¶¶ 7-8.  Third, the *Laffey* Matrix projects that Mr. Hefelfinger's rate should be $759 per hour.  Strauss Decl. at ¶ 39 and Ex. A.  Fourth, the *Craig* arbitrator approved Mr. Hefelfinger's rate of $625 last year for an arbitration venued in San Francisco.  Strauss Decl. at ¶ 42; Dkt. 103 at 60.  Fifth, attorneys with comparable experience have billed their fees at similar rates in the local market.  Helland Decl. at ¶ 5; *Caudle*, 2019 WL 6841239, at *5; *Bellinghausen*, 3-6 F.R.D. at 262; *Roberts*, 2018 WL 510286 , at *14-15.

1    Andrew C. Ellison is an associate of Strauss & Strauss, APC and has been practicing

2  employment law with the firm since 2012.  Declaration of Andrew C. Ellison in Support of Motions for

3  Final Approval of Class Action and Private Attorneys General Act Settlement, for Attorneys' Fees and

4  Costs, and for Class Representative Service Enhancements (Ellison Decl.) at ¶ 3.  He has focused his

5  practice on representing employees over the last nine years.  *Id.* at ¶ 4.  Mr. Ellison's requested rate is

6  $400 per hour.  This rate is the same as that billed by Mr. Ellison in the local market.  Strauss Decl. at ¶

7  41.  In 2020, Mr. Helland opined that $400 per hour for an associate admitted to practice in 2012 is a

8  reasonable rate in this market.  Helland Decl. at ¶¶ 7-8.  The arbitrator in *Craig* agreed, approving Mr.

9  Ellison's $400-per-hour rate in 2020.  Strauss Decl. at ¶ 42; Dkt. 103 at 60.  Courts in this district have

10  approved similar rates for employment matters.  *Bellinghausen*, 306 F.R.D. at 262; *Roberts*, 2018 WL

11  510286, at *14-15; *Caudle*, 2019 WL 6841239, at *5 (approving rate of $400 per hour for associate

12  admitted to practice in 2015).  Finally, the *Laffey* Matrix suggests that an attorney with Mr. Ellison's

13  level of experience could bill at the rate of $672 per hour.  Strauss Decl. at ¶ 39 and Ex. A.

14    Coleen De Leon is a certified paralegal in Mr. Gutierrez's office.  Dkt. 132-8 (Declaration of

15  Coleen De Leon in Support of Motion for Preliminary Approval of Class Action and Private Attorneys

16  General Act Settlement, for Attorneys' Fees and Costs, and for Class Representative Service

17  Enhancements [De Leon Decl.]) at ¶¶ 3-4.  She has 20-plus years of experience supporting the litigation

18  of employment cases.  *Id.* at ¶ 3.  Courts have recognized that Ms. De Leon performs "work more akin

19  to a junior level associate."  *Aguilar,* 2014 WL 4063144, at *6.  In 2014, the Northern District of

20  California approved her rate of $180 per hour in an employment law matter.  *Id.*  Five years later, her

21  rate has increased slightly to $200 per hour.  Such a rate is reasonable in the Bay Area.  Helland Decl.

22  at ¶¶ 7-8.  The arbitrator in *Craig* approved Ms. De Leon at that same rate in a contested motion for

23  attorney's fees.  Strauss Decl. at ¶ 42; Dkt. 103 at 60.  Courts in this district have approved similar rates

24  for paralegals in wage-and-hour cases.  *See Caudle*, 2019 WL 6841239, at *5 (approving paralegal rate

25  of $175 per hour); *Moore v. PetSmart, Inc.,* No. 5:12-CV-03577-EJD, 2015 WL 5439000, at *12 (N.D.

26  Cal. Aug. 4, 2015), *aff'd*, 728 F. App'x 671 (9th Cir. 2018) ("In this case, the relevant community is the

27  Northern District of California where reasonable rates for partners range from $560 to $800, associates

28  range from $285 to $510, and paralegals and litigation support staff range from $150 to $240."); *Loretz*

*v. Regal Stone, Ltd.*, 756 F. Supp. 2d 1203, 1211 (N.D. Cal. 2010) (finding hourly rate of $225 for a legal assistant to be reasonable).  The *Laffey* Matrix suggests that Ms. De Leon's rate should be a slightly higher $206 per hour.  Strauss Decl. at ¶ 39 and Ex. A.

### c. An upward lodestar multiplier is warranted.

Using these reasonable hours and rates, Plaintiffs' lodestar is $304,262.50.  The Court may adjust the lodestar upward or downward by an appropriate positive or negative multiplier reflecting a host of "reasonableness" factors, "including the quality of representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment," *Hanlon*, 150 F.3d at 1029 (citing *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975).  "Foremost among these considerations, however, is the benefit obtained for the class."  *In re Bluetooth*, 654 F.3d at 942.

Although it represents the benchmark of 25 percent of the common fund, Plaintiffs' requested fee award of $637,500 exceeds their lodestar.  To reach the requested fee award amount, the lodestar must be multiplied by 2.09.  This multiplier is well within the range of multipliers routinely approved in this Circuit in comparable common fund settlements.  *See Vizcaino,* 290 F.3d at 1051 (approving multiplier of 3.65 and citing recent cases approving multipliers as high as 9.6); *Steiner v. Am. Broad. Co.,* 248 Fed. Appx. 780, 783 (9th Cir. 2007) (affirming award with multiplier of 6.85); *In re the PMI Group, Inc. Sec. Litig.,* No. 08-1405 SI (N.D. Cal. Dec. 16, 2010) (approving 25% fee, resulting in 4.76 multiplier).

Such an upward lodestar adjustment is warranted because the *Hanlon* reasonableness factors are satisfied.  As discussed above, Plaintiffs' counsel exhibited a high quality of representation, which resulted in an excellent recovery for the Settlement Class.  The issues presented are complex and novel, especially with respect to Plaintiffs' theory of liability on their minimum wage claim.  Finally, Plaintiffs' counsel took this case on a contingency fee basis, and there was no guarantee they would be paid for all hours recorded.  This is highlighted by the fact that Plaintiffs' counsel recorded hundreds of hours pursuing claims in the *Bankwitz* and *Jacobo* individual arbitrations that the arbitrators did not include in their final awards.[4]  As in those two arbitrations, if Plaintiffs were to proceed to a final judgment in this

---

[4] Plaintiffs do not seek fees in this case for any time they recorded in the *Bankwitz* and *Jacobo* arbitrations (or any other arbitrations against Ecolab).  No such time is included in the lodestar figures used in this Motion.  Strauss Decl. at ¶ 45.

19

1   case but not prevail on all of their claims, the Court could substantially reduce their eventual fee award

2   based on their partial success, thereby prohibiting Plaintiffs' counsel from obtaining a recovery for all

3   hours they recorded.  In the end, however, the benefit conferred upon the Class Members – an average

4   recovery of $30,812.89 – is proof enough that Plaintiffs' counsel's lodestar should be adjusted upward

5   to account for the difference between their lodestar and their requested fee award of 25 percent of the

6   common fund.  For these reasons, the lodestar cross check supports the reasonableness of the requested

7   fee award.

8   ## V.    REQUEST FOR REIMBURSEMENT OF COSTS

9       The Settlement provides that class counsel may seek up to $150,000 from the common fund for

10  reimbursement of litigation expenses. Settlement at ¶ IX.C.  Class Counsel now seek reimbursement of

11  only $20,917.07 in costs.  Strauss Decl. at ¶ 50 and Ex. D. These costs, a full itemized listing of which

12  appears in the Strauss Declaration, include expenses for mediation, expert witnesses, parking, court

13  filing, airfare and transportation, delivery, and PAGA filing.  *Id*. These costs are reasonable and should

14  be fully paid from the common fund.

15      Each of the above cost categories represents an integral component in the successful litigation

16  herein, and courts routinely find that reimbursement for such costs reasonable and permissible. *See*

17  *Barbosa*, 297 F.R.D. at 454 (finding that costs associated with "travel, mediation fees, photocopying,

18  private investigator to locate missing Class Members, and delivery and mail charges" were routine costs

19  that should be reimbursed).

20  ## VI.    REQUEST FOR PLAINTIFF ENHANCEMENT AWARDS

21      Plaintiffs respectfully request incentive awards of $25,000 each.  "[N]amed plaintiffs . . . are

22  eligible for reasonable incentive payments" as part of a class action settlement. *Staton v. Boeing Co.*,

23  327 F.3d 938, 977 (9th Cir. 2003).  Courts routinely award such awards, which are intended to advance

24  public policy by encouraging individuals to come forward and take action to protect the rights of the

25  class, as well as to compensate class representatives for their time, effort and inconvenience. *Staton*, 327

26  F.3d at 976-77. Service awards "are intended to compensate class representatives for work done on

27  behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and,

28  sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez v. West Publ'g*

1   *Corp.*, 563 F.3d 948, 959 (9th Cir. 2009).  An incentive award cannot be conditioned upon the approval

2   of the full amount of the requested award.  *Radcliffe v. Experian Info. Solutions Inc.*, 715 F.3d 1157,

3   1161 (9th Cir. 2013).

4          The parties' Settlement expressly permits Plaintiffs to seek enhancement/incentive awards up to

5   a maximum of $25,000.00 each for the Settlement Class representatives, Plaintiffs Bankwitz and Jacobo.

6   Settlement at ¶ IX.D.  The requested incentive awards are partly consideration for the comprehensive

7   releases (with Civil Code section 1542 waivers) entered into by Bankwitz and Jacobo.  *Id.* at ¶ XV.C.

8   Their receipt of incentive awards is "not contingent upon approval of the full amount of the requested

9   service payment, and a Court order granting no service payment or a service payment in a lesser amount

10  shall not invalidate the PAGA/Class Agreement."  Settlement at § IX.D.

11         Messrs. Bankwitz and Jacobo deserve incentive awards at the requested amount.  They each

12  performed the duties expected of a class representative.  Dkt. 133 (Declaration of Robert Bankwitz in

13  Support of Motion for Preliminary Approval of Class Action and Private Attorneys General Act

14  Settlement [Bankwitz Decl.]) at ¶¶ 8-26; Dkt. 133-1 (Declaration of William Jacobo in Support of

15  Motion for Preliminary Approval of Class Action and Private Attorneys General Act Settlement [Jacobo

16  Decl.]) at ¶¶ 6-23; Strauss Decl. at ¶¶ 59-63; Ellison Decl. at ¶¶ 10-12.  They spent many hours engaging

17  in conversations with Class Counsel and fellow members of the Settlement Class and helping direct the

18  document and data requests conducted in this case.  Bankwitz Decl. at ¶ 12; Jacobo Decl. at ¶ 8; Ellison

19  Decl. at ¶ 12.  They spent hours reviewing the evidence and aiding in the decisions to proceed.  Bankwitz

20  Decl. at ¶¶ 10-12; Jacobo Decl. at ¶ 8.  They reviewed hundreds of pages of documents pertinent to

21  various facets of the litigation, mediations and negotiations, as well as thousands of lines of sales and

22  commissions data related to the case.  Bankwitz Decl. at ¶¶ 10-12; Jacobo Decl. at ¶ 8.

23         The two Plaintiffs also participated in their individual arbitrations.  Bankwitz Decl. at ¶ 11;

24  Jacobo Decl. at ¶ 8; Strauss Decl. at ¶ 59.  The PAGA claim resolved by this Settlement was contingent

25  on the success of these two arbitrations.  Their efforts in pursuing individual arbitrations – as the first

26  two TMs to arbitrate their claims – also directly impacted the settlement negotiations in this case, since

27  they prevailed on their overtime claims and obtained sizeable fee awards.  Strauss Decl. at ¶ 60.

28

1    The two named Plaintiffs also risked their personal assets in the prosecution of this case.  Their

2   fee agreements with counsel obligated them to pay litigation costs, and they could potentially face an

3   adverse award of costs for Ecolab in the event they lost the case.  Bankwitz Decl. at ¶ 18; Jacobo Decl.

4   at ¶ 15; Strauss Decl. at ¶ 61.

5    Finally, Messrs. Bankwitz and Jacobo entered into a comprehensive release with a Civil Code

6   section 1542 waiver in exchange for the resolution of their claims in the Settlement.   Settlement at ¶

7   XV.C.  By contrast, the other (non-named-plaintiff) Class Members are only releasing their wage-and-

8   hour claims against Ecolab in exchange for participating in the Settlement.

9    The requested service awards here fall within the range of amounts awarded in comparable cases

10   in the Northern District and are appropriate given the duration of the litigation and the requisite level of

11   commitment by the named Plaintiffs, as well as the results (settlement fund) achieved.  *See, e.g.,*

12   *Bellinghausen*, 306 F.R.D. at 268 (incentive award of $15,000 to named plaintiff justified in a wage and

13   hour class action with settlement fund of $1,000,000); *Ross v. U.S. Bank Nat. Ass'n*, No. C07-02951SI,

14   2010 WL 3833922, at **2, 4 (N.D. Cal. Sept. 29, 2010) (class representative enhancement awards of

15   $80,000 combined warranted in wage and hour class action with total settlement amount of $3,500,000);

16   *Lazarin v. Pro Unlimited, Inc.*, No. C11-03609 HRL, 2013 WL 3541217, at *10 (N.D. Cal. July 11,

17   2013) (approving enhancement awards of $25,000 each to class representatives in wage and hour class

18   action with settlement amount of $1,250,000); *Taylor v. Fedex Freight, Inc.*, No. 5:10-cv-02118 LHK

19   (N.D. Cal. Jan. 27, 2012) (approving service award in the amount of $25,000 to named plaintiff in wage

20   and hour class action with settlement amount of $5,250,000). The requested service awards also fall in

21   line with amounts awarded in comparable cases in other districts in the Ninth Circuit. *See, e.g., Singer*

22   *v. Becton Dickinson & Co.*, No. 08-CV-821-IEG (BLM), 2010 WL 2196104, at *9 (S.D. Cal. June 1,

23   2010) (awarding $25,000 incentive award to class representative in wage and hour class action with $1

24   million settlement amount, noting the award was "well within the acceptable range awarded in similar

25   cases."); *Martin v. AmeriPride Servs., Inc.*, No. 08CV440-MMA JMA, 2011 WL 2313604, at *9 (S.D.

26   Cal. June 9, 2011) ($18,500 incentive award in wage and hour class action with settlement amount of

27   $5,250,000 "well within the acceptable range awarded in similar cases").

28

Recently, in wage and hour litigation entitled *Fuller v. Zep, Inc.*, class counsel requested an incentive award of $35,000 for a class representative who achieved a $1.5 million settlement fund for the settlement class of around 289 workers. *Fuller v. Zep, Inc.*, No. 4:18-cv-02672-JSW (N.D. Cal. Jan. 22, 2020). There, while the *Fuller* court acknowledged that the incentive award requested was "more than ten times the average payment class members will receive from the Settlement Fund," and that it might even be "approximately $13,000 more than the highest payment expected to be paid to a class member," the Northern District nonetheless approved an incentive award of $30,000 to the plaintiff. The *Fuller* court considered the amount of the settlement fund, the amounts individual class members are likely to receive, the risks the plaintiff took to bring this case, the amount of time and effort he expended, the general release that the plaintiff would be giving, and the opinion of all counsel, and awarded the higher-than-average award.

Here, the same logic should apply, but with even greater support, since Plaintiffs' efforts on behalf of the Settlement Class resulted in an excellent recovery. The amount they each seek as an incentive – $25,000 – is less than the average recovery for each Class Member (approximately $31,000 each, with the highest recovery being over $107,000). Strauss Decl. at ¶ 55. Plaintiffs faced the same obstacles as the *Fuller* plaintiff, including risking their personal assets, spending years litigating the case, and entering into a general release.

In sum, the work performed by Messrs. Bankwitz and Jacobo, which directly impacted the value of the Settlement, is fully deserving of an incentive award. The requested award of $25,000 each is reasonable and warranted under the circumstances of this case, and Plaintiffs respectfully request that the Court award them their full requested incentive amounts.

## VII. PAYMENT TO CLAIMS ADMINISTRATOR

Plaintiffs request the Court to confirm its previous appointment of Simpluris as the Claims Administrator. Simpluris has thus far fulfilled its duties under the Settlement. Kincannon Decl. at ¶¶ 5-9. Plaintiffs further request that the Court order Simpluris to be paid $8,500 from the settlement fund for expenses relating to notice and administration of the Settlement.

1

**VIII.   CONCLUSION**

2

   Plaintiffs respectfully request that the Court (1) grant final approval to the Settlement; (2) grant

3

the motions for attorneys' fees and costs; (3) grant the request for enhancement awards; (4) direct the

4

parties to perform their obligations as set out in the Settlement; (5) dismiss the action with prejudice;

5

and (6) retain jurisdiction to the extent necessary to implement the terms of the Settlement until each act

6

to be performed by the Parties under the Settlement has been performed.

7

8

Date:  May 13, 2021                      **STRAUSS & STRAUSS, APC**

9

                                By: */s/ Michael A. Strauss*

10

                                     Michael A. Strauss
                                     Attorneys for Plaintiffs and the Class

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28